STATE of Wisconsin, Plaintiff-Respondent,

v.

John F. POWERS, Defendant-Appellant.

Court of Appeals

*No. 03–1514–CR. Submitted on briefs January 13, 2004.— Decided July 29, 2004.*

2004 WI App 156

(Also reported in 687 N.W.2d 50.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Marcus J. Berghahn* and *John D. Hyland* of *Hurley, Burish & Milliken, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edwin J. Hughes*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Vergeront and Higginbotham, JJ.

¶ 1. DEININGER, P.J.   John Powers appeals an order denying his motion to dismiss a charge of second-degree sexual assault in violation of WIS. STAT. § 940.225(2)(g) (2001–02).[1] The statute makes it a crime for an employee of a facility or program specified

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

in the statute to have sexual contact or sexual intercourse with a patient or resident of the facility or program. Powers, an employee of a federal health care facility located in Wisconsin, contends that only employees of "inpatient health care facilities"[2] that are licensed or regulated by the Wisconsin Department of Health and Family Services (DHFS) are subject to prosecution under § 940.225(2)(g). The State concedes Powers' argument and we concur that the trial court erred in failing to dismiss the charge. We therefore reverse the appealed order and direct that, on remand, the trial court shall dismiss count one of the information alleging a violation of § 940.225(2)(g).

## BACKGROUND

¶ 2. At the time of Powers' alleged offense, WIS. STAT. § 940.225(2)(g) made it a Class BC (now Class C) felony for "an employee of a facility or program under s. 940.295(2)(b), (c), (h), or (k)" to have "sexual contact or sexual intercourse with a person who is a patient or resident of the facility or program." The referenced statute, WIS. STAT. § 940.295(2), identifies the following facilities or programs in the cited paragraphs: (b) an adult family home; (c) a community-based residential facility; (h) an inpatient health care facility; and (k) a state treatment facility. The amended complaint and information allege that Powers is an employee of "an inpatient health care facility," specifically, the "Tomah VA Medical Center."

¶ 3. The term, "inpatient health care facility," is defined by WIS. STAT. § 940.295(1)(i) as having "the meaning given in s. 50.135(1)." WISCONSIN STAT.

---

[2] *See* WIS. STAT. §§ 50.135(1) and 940.295(1)(i) and (2)(h), which are quoted in the Background section of this opinion.

110

§ 50.135(1), in turn, provides that the term "means any hospital, nursing home, county home, county mental hospital or other place licensed or approved by the [DHFS] under ss. 49.70, 49.71, 49.72, 50.02, 50.03, 50.35, 51.08 and 51.09, but does not include community-based residential facilities." The final links in this chain of statutory cross-references, in the order cited, refer to "county homes"; "county hospitals"; "county infirmaries"; "community-based residential facilities" and "nursing homes"; "hospitals"; the "Milwaukee County Mental Health Complex"; and "county . . . hospital[s] . . . for the detention and care of mentally ill persons, alcoholics and drug addicts."

¶ 4. Powers is a physician's assistant. At the time of the alleged offense, he worked for the Tomah VA Medical Center, which is operated by the United States Department of Veterans Affairs. The State alleged in the complaint that Powers engaged in non-consensual sexual intercourse with a person who had recently undergone surgery at the VA Medical Center and had a scheduled follow-up appointment there. The State initially charged Powers with one count of third-degree sexual assault for the alleged act of intercourse without consent. *See* WIS. STAT. § 940.225(3). After filing the complaint, the State amended it to add an additional charge of second-degree sexual assault in violation of § 940.225(2)(g), a charge for which "[c]onsent is not an issue." *See* § 940.225(4). The State based the added charge on allegations that Powers was "an employee of a facility under 940.295, specifically an inpatient health care facility" and that the victim was a "patient of that inpatient health care facility."

¶ 5. After his arraignment on both counts, Powers moved to dismiss the added charge. He asserted that the court lacked "subject matter jurisdiction" because

111

the VA Medical Center is neither an "inpatient health care facility" as alleged by the State nor any of the other facilities or programs referred to in WIS. STAT. § 940.225(2)(g). The trial court denied the motion, concluding in an oral ruling that Powers' employer was both an "inpatient health care facility" and a "state treatment facility" within the meaning of § 940.225(2)(g).[3] Powers moved for reconsideration, which the trial court denied in a written order. We granted Powers petition for leave to appeal the trial court's non-final order. *See* WIS. STAT. RULE 809.50.

## ANALYSIS

¶ 6.  The State confesses error, conceding that the trial court erred in denying Powers' motion to dismiss. We, however, have a responsibility to independently review the record and the law even when error is confessed. *See Rudolph v. State*, 78 Wis. 2d 435, 447, 254 N.W.2d 471 (1977). The question before us is straightforward:  Is an employee of a health care facility operated by the United States Department of Veterans Affairs subject to prosecution for an alleged violation of WIS. STAT. § 940.225(2)(g)? We agree with the parties that the answer is "no."

---

[3] Although not the asserted basis of the State's added charge, WIS. STAT. § 940.225(2)(g) also applies to employees of a "state treatment facility." *See* WIS. STAT. § 940.295(2)(k). The term is statutorily defined to mean "any of the institutions operated by the [Department of Health and Family Services (DHFS)] for the purpose of providing diagnosis, care or treatment for mental or emotional disturbance, developmental disability, alcoholism or drug dependency and includes but is not limited to mental health institutes." *See* WIS. STAT. §§ 51.01(15) and 940.295(1)(r).

¶ 7. As he did in the trial court, Powers couches his argument on appeal in terms of jurisdiction, although he no longer specifies "subject matter jurisdiction" as he did in the trial court. We emphasize that the question before us does not implicate the circuit court's subject matter jurisdiction. That court plainly has subject matter jurisdiction over all allegations of criminal conduct in violation of Wisconsin Statutes.[4] The circuit court would lack subject matter jurisdiction only if the crime charged is unknown in law, in other words, if it is a "nonexistent crime." *See State v. Briggs*, 218 Wis. 2d 61, 68, 579 N.W.2d 783 (Ct. App. 1998). Count one of the information, alleging a violation of WIS. STAT. § 940.225(2)(g), is not a crime unknown in law—there are persons to whom the statute plainly applies who may be prosecuted and convicted for the conduct that the statute criminalizes. The question before us is whether Powers is one of those persons. Thus, the issue is not whether the circuit court had subject matter jurisdiction but whether the State's amended complaint (or, perhaps, the testimony adduced at the preliminary hearing together with certain conceded facts) provide probable cause to believe that Powers violated § 940.225(2)(g).[5]

---

[4] *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 1, 273 Wis. 2d 76, 681 N.W.2d 190 ("Circuit courts in Wisconsin are constitutional courts with general original subject matter jurisdiction over 'all matters civil and criminal.' WIS. CONST. art. VII, § 8. Accordingly, a circuit court is never without subject matter jurisdiction.").

[5] We note that Powers did not challenge the sufficiency of the amended complaint for failing to state probable cause that he had violated WIS. STAT. § 940.225(2)(g). A motion making that claim should have been filed prior to Powers' preliminary

¶ 8.  The question of who may be charged withviolating WIS. STAT. § 940.225(2)(g) requires us to inter-

hearing, but Powers first moved to dismiss the charge after his preliminary hearing and arraignment, thus arguably waiving a challenge to the amended complaint. *See* WIS. STAT. § 971.31(5)(c) (providing that in "felony actions, objections based on the insufficiency of the complaint shall be made prior to the preliminary examination or waiver thereof or be deemed waived"). Powers also did not contend in the trial court that the preliminary hearing testimony failed to establish probable cause to believe that he had committed a felony. In fact, his counsel conceded at the close of the preliminary hearing that the court "has sufficient information based on the preliminary hearing to indicate that there's probable cause on Count II," which charged third-degree sexual assault, also a felony. Thus, there is no dispute that Powers was properly bound over for trial on at least one felony. *See State v. (John) Williams*, 198 Wis. 2d 516, 536, 544 N.W.2d 406 (1996).

A prosecutor may include in an information any counts that are "transactionally related to a count on which the defendant is bound over," regardless of whether the State established probable cause at the preliminary hearing to believe that the defendant committed the transactionally related felonies. *Id.* at 537; *see also State v. (Scott) Williams*, 198 Wis. 2d 479, 483, 544 N.W.2d 400 (1996) (holding "that the State need only establish probable cause that a felony occurred as to one count in a set of transactionally related counts for there to be a valid bind over on that set, and need not establish probable cause that the specific felony alleged in each count was committed"). There can be no question that count one of the information, alleging a violation under WIS. STAT. § 940.225(2)(g) is "transactionally related" to count two, third-degree sexual assault. Both counts arose from a "common nucleus of facts" in that they involve the same victim and the same alleged act, and thus obviously took place at the same time and location. *See (John) Williams*, 198 Wis. 2d at 525.

Thus, it could be argued that Powers was not entitled to

pret the statute and the statutes to which it refers, a task we perform de novo. *See Ocasio v. Froedtert Mem'l Lutheran Hosp.*, 2002 WI 89, ¶ 11, 254 Wis. 2d 367, 646 N.W.2d 381. The Wisconsin Supreme Court has recently instructed courts on how to proceed when interpreting a statute:

> We assume that the legislature's intent is expressed in the statutory language .... Thus ... statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. Context is important to meaning. So, too, is the structure of the statute

---

raise the issue of whether the charge under WIS. STAT. § 940.225(2)(g) is viable, and that he must wait and make that challenge at trial by moving to dismiss the challenged count at the close of the State's case. As we have noted, however, the State concedes that an employee of a federally operated facility cannot be convicted of violating § 940.225(2)(g). Moreover, the State makes no complaint about the procedural posture of the case as it may affect consideration of the issue now before us. Assuming that the State will present at trial the same testimony it adduced at the preliminary hearing, as well as additional, undisputed facts relating to Powers' employer, we conclude that the challenged count should be dismissed on defense motion. We granted leave to appeal the issue now rather than "on an appeal from the final judgment in the case," however, because a determination of the issue raised by Powers' motion to dismiss will "clarify further proceedings [in this case and] ... clarify an issue of general importance in the administration of justice." WIS. STAT. RULE 809.50(1)(c). We see little point in postponing the statutory interpretation issue until trial or review of it until after a possible conviction. We therefore do not address any timing or waiver issues that may be suggested by the record.

in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage. If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning . . . .

*State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 44–46, 271 Wis. 2d 633, 681 N.W.2d 110 (citations, quotation marks, paragraph breaks and numbering omitted).

¶ 9. We thus begin with the language of WIS. STAT. § 940.225(2)(g), which provides that, in order to commit this crime, one must be "an employee of a facility or program under s. 940.295(2)(b), (c), (h) or (k)." As we have explained, the cited paragraphs under WIS. STAT. § 940.295(2) identify four types of "facilities or programs": (1) adult family homes; (2) community-based residential facilities; (3) inpatient health care facilities; and (4) state treatment facilities. Of these, the only category into which Powers' employer, the Tomah VA Medical Center, might possibly fall is the third, inpatient health care facilities, which is what the State alleged in its amended complaint.[6] An "inpatient health

---

[6] As we have noted, the trial court concluded that the Tomah VA Medical Center was also a "state treatment facility." In so doing, however, the court apparently consulted the definition of "treatment facility" in WIS. STAT. § 51.01(19), which defines this broader term as covering "any publicly or privately operated facility" that provides certain types of treatment. But "treatment facilities" are *not* among the "facilities or programs"

care facility" is "any *hospital,* nursing home, county home, county mental hospital *or other place licensed or approved by the [DHFS]* under ss. 49.70, 49.71, 49.72, 50.02, 50.03, 50.35, 51.08 and 51.09." WIS. STAT. § 50.135(1) (emphasis added); *see* § 940.295(1)(i).

¶ 10.    Powers asserts that the Tomah VA Medical Center "is a federal facility over which the State does not exercise independent regulatory authority," and the State acknowledges that it "is undisputed that the Tomah VA hospital is subject to federal regulation, but is not licensed or regulated by the state." Although neither party cites evidence in the record (or legal authority) for this "undisputed" proposition, we will accept it as a stipulated fact.[7] This means that, if the

whose employees are chargeable under WIS. STAT. § 940.225(2)(g); only employees of "state treatment facilities" are subject to the criminal statute at issue. This is because "treatment facility" is identified in WIS. STAT. § 940.295(2)(L), which is not one of the four paragraphs in that subsection to which § 940.225(2)(g) refers. A "state treatment facility," which is identified in § 940.295(2)(k) and is thus included within the scope of § 940.225(2)(g), is an "institution operated by" the DHFS. Section 51.01(15) (see footnote 3). There is no dispute that the Tomah VA Medical Center is not operated by the DHFS but by the U.S. Department of Veterans Affairs. We acknowledge the difficulty of the cross-referenced journey that courts and counsel must take in attempting to determine the scope of § 940.225(2)(g). (See footnote 10.)

[7] We note that we have not found an express exemption from licensing and regulation in applicable Wisconsin Statutes for federally operated veterans' hospitals. *See, e.g.,* WIS. STAT. §§ 50.135, 50.32 through 50.39. The federal government, however, has apparently established its own structure governing the administration and regulation of veterans' hospitals and medical facilities. *See* 38 U.S.C. § 301, et seq. (establishing the Department of Veterans Affairs); chapter 81 of 38 U.S.C. § 301 (authorizing the acquisition and operation of hospital facilities

language of Wis. Stat. § 50.135(1) is interpreted as requiring that, in order to be an "inpatient health care facility," a facility must be licensed or approved by the Wisconsin DHFS, then the Tomah VA Medical Center is not one. If, on the other hand, as the State argued in the trial court, the phrase "licensed or approved by the [DHFS] under [enumerated statutes]" modifies only its immediate antecedent ("other place") and not the entire preceding list ("any hospital, nursing home, county home, county mental hospital or other place"), then all hospitals located in Wisconsin, whether licensed or approved by the DHFS or not, are "inpatient healthcare facilities," including the Tomah VA Medical Center.

¶ 11.   We conclude that the plain meaning of the language in Wis. Stat. § 50.135(1), taken in proper context, requires that all of the specifically enumerated facilities ("hospital, nursing home, county home, county mental hospital") must be "places licensed or approved by" the DHFS in order to come within the definition of "inpatient health care facility." First, the word "other" before "places" strongly supports this interpretation because it suggests that the enumerated facilities and the additional "places" within the definition share the

for veterans). A fundamental principle underlying our federal system of government is "that the [U.S. C]onstitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them." *M'Culloch v. Maryland*, 17 U.S. 316, 426 (1819). Just like the power to tax, the power to license and regulate seemingly "involves the power to destroy." *Id*. at 431. It would thus appear that federally operated veterans hospitals are shielded by the Supremacy Clause from state licensing and regulation, unless Congress provides clear and unambiguous authorization for state regulation, which we are not aware it has done. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988).

common characteristic of being "licensed or approved by" the DHFS. If that characteristic was not meant to be applied to all enumerated facilities, the word "other" should have been omitted, or perhaps replaced by "any," in order to signify that the additional "other places" were the only ones to which the licensing or approval characteristic applied.

¶ 12. Second, when attempting to discern the meaning of a statute, we must do so with an eye to the context and structure of the statute. *Kalal*, 271 Wis. 2d 633, ¶ 46. Here, even though the end product of our work is the interpretation of a criminal statute, WIS. STAT. § 940.225(2)(g), the language at issue, incorporated by way of multiple cross-references, is found in WIS. STAT. ch. 50, which is titled "UNIFORM LICENSURE." Moreover, the caption of the specific statute whose meaning is at issue, WIS. STAT. § 50.135(1), is "Licensing and approval fees for inpatient health care facilities." The balance of § 50.135 establishes the annual fees that "inpatient health care facilities" must pay and exempts some from the required payments. Given this structure and context, it is simply not reasonable to read the definition of "inpatient health care facility" in § 50.135(1) as extending to any facility that is not subject to DHFS "licensing and approval."

¶ 13. Finally, we note that, in concluding that only an "other place" needs to be "licensed or approved by the department" in order to be an "inpatient health care facility" under WIS. STAT. § 50.135(1), and that a "hospital" need not be, the trial court essentially applied the principle of "last preceding antecedent." Under that canon of construction, qualifying or limiting words and

phrases are deemed to refer only to the immediately preceding antecedent, unless a contrary legislative intent appears. 2A Norman J. Singer, *Statutes and Statutory Construction* § 47.33, at 369 (6th ed. 2000). However, the rule is not "inflexible and uniformly binding," *id.* at 372, and "[w]here the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent," *id.* We conclude that, given the context and structure of § 50.135 that we have described, the general rule of applying a limiting or qualifying phrase to only the last preceding antecedent would be contrary to "the sense of the entire" statute. *See, e.g., Service Inv. Co. v. Dorst*, 232 Wis. 574, 577, 288 N.W. 169 (1939) ("Although as a general rule of construction a modifying clause is considered ordinarily to be confined to the last antecedent, that rule is not always applicable and may be easily rebutted where other circumstances so indicate.").

¶ 14. We next consult the State of Wisconsin Legislative Reference Bureau's "Bill Drafting Manual (2001–02)" to see if it provides additional insight to the meaning of the language at issue.[8] We note first that the

---

[8] We do not view the LRB "Bill Drafting Manual" to be an "extrinsic source" akin to legislative history materials, which a court should not consult except in cases of ambiguity, or, perhaps, to confirm an interpretation based on the plain meaning of the language at issue. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 50, 271 Wis. 2d 633, 681 N.W.2d 110. Rather, the manual is a reference work that assists us in ascertaining the "common and accepted meaning" of words and phrases employed in the Wisconsin Statutes, much as would a dictionary. *See id.*, ¶¶ 53–54. Put another way, the Bill Drafting Manual does not purport to assist us in determining

manual directs bill drafters to employ the term "means" instead of "includes" whenever enumerated items in a definition are intended to render the definition "complete." *Id.*, § 2.01(i). The manual notes that " 'includes' allows a court or administering agency to adopt additional meanings; using 'means' restricts them to reasonable constructions of your wording." *Id.* Because Wis. Stat. § 50.135(1) employs the term "means," it is apparent that "inpatient health care facilities" are limited to those facilities specifically identified in the subsection, as opposed to including any facilities that are only similar to those enumerated.

¶ 15. This conclusion is of some assistance because it means that, if the qualifying phrase, "licensed or approved by the department," applies to each enumerated facility, such as a "hospital," then we are not free to say that any hospital that is not licensed or approved by DHFS is also an "inpatient health care facility" if it is similar to those that are.

¶ 16. We turn next to the manual's discussion of "modifiers." Drafters are advised that they should "[b]e careful that you modify only the words that you intend to modify." *Id.*, § 2.01(17m)(a). The manual provides the example of the phrase, "an 18–year-old parolee, probationer, or convict," which it suggests is ambiguous because it is not clear whether each category of persons must be eighteen years old or only parolees must be that age. *Id.* The manual then recommends that, if the intent is to modify all terms, a formulation such as the

what legislators were thinking when they enacted Wis. Stat. § 50.135(1). Rather, the manual assists us in determining the meaning of the statutory language itself by revealing the standards and definitions relied on by those who choose and arrange the words, phrases and punctuation found in the Wisconsin Statutes.

following be employed: "a person who is a parolee, probationer, or convict and who is at least 18 years old." *Id.* at (b). If the intent is to modify only one of the listed terms, however, the following is recommended as preferable: "a probationer who is at least 18 years old, a parolee or a convict." *Id.* at (c).

¶ 17. Unfortunately, neither of these precise formulations is employed in WIS. STAT. § 50.135(1). Although the modifier ("licensed or approved by the department") comes at the end of the enumerated facilities, it is not introduced by "and that is" or other words that would expressly apply it to each enumerated facility. Even so, we conclude that, under the manual's guidance to drafters, to convey a meaning that *only* "other places" need be "licensed or approved by the department" in order to be "inpatient health care facilities," and that the enumerated facilities need not be, the definition in § 50.135(1) would read something like this: " 'Inpatient health care facility' means any place licensed or approved by the department under [enumerated statutes], and any hospital, nursing home, county home, or county mental hospital."

¶ 18. We conclude that the use of a formulation in WIS. STAT. § 50.135(1) that does not clearly assign the modifier to only "other places," as recommended by the Bill Drafting Manual, supports our interpretation that "licensed or approved by the department" applies to all enumerated facilities as well as to "other place."[9]

---

[9] We note that § 2.01(17m)(d) of the Bill Drafting Manual also calls to the attention of bill drafters the principle of "last preceding antecedent," which we have discussed above. The manual informs drafters that, under Wisconsin case law, "qualifying or limiting words in a statute generally refer to the nearest antecedent only," citing *Vandervelde v. Green Lake*, 72 Wis. 2d 210, 214–15, 240 N.W.2d 399 (1976), but that there are

¶ 19. The State argued in the trial court, however, that it would be absurd to read WIS. STAT. § 940.225(2)(g) as criminalizing sexual contact or intercourse between employees of only state-licensed inpatient health care facilities and their patients. We acknowledge that there is no readily apparent rationale for not criminalizing the same conduct if engaged in by an employee of an inpatient health care facility that is located in Wisconsin but is not licensed by DHFS (or for that matter, for rendering the conduct criminal when engaged in by employees of "state treatment facilities," but not when committed by employees of other publicly or privately operated "treatment facilities" (see footnotes 3 and 6)). We are to give effect, however, to the plain meaning of the language the legislature enacted, not what its members may have intended to enact. *See Kalal*, 271 Wis. 2d 633, ¶ 44.[10]

exceptions, such as in *Lund v. Kokemoor*, 195 Wis. 2d 727, 537 N.W.2d 21 (Ct. App. 1995), where we concluded that "economic" modifies both "injuries" and "damages" in the phrase "or economic injuries and damages."

[10] We observe that the scope of WIS. STAT. § 940.225(2)(g) seems unnecessarily obscure due to the multiple statutory cross-references employed to establish it. The legislature may wish to revisit § 940.225(2)(g) to determine whether the language of the statutes incorporated by reference accurately reflect the intended scope of this criminal statute. Moreover, if the legislature chooses to consider amending § 940.225(2)(g), it may also wish to consider another issue that arguably arises from the present facts. The sexual assault of which Powers is accused did not take place on the premises of the Tomah VA Medical Center but at the home of a person who had recently undergone surgery at the center. The "facilities or programs" identified by cross-reference in § 940.225(2)(g) all appear to be residential or "inpatient" facilities. However, the definition of

¶ 20. Accordingly, we conclude that the trial court erred in not dismissing count one of the information, alleging a violation of Wis. Stat. § 940.225(2)(g). Although the complaint alleges that Powers was an employee of the Tomah VA Medical Center, that facility is not "an inpatient health care facility," or any other type of "facility or program" to which § 940.225(2)(g) applies. The State's amended complaint, therefore, does not state probable cause that Powers committed this crime. Even though Powers acknowledges that he was properly bound over for trial on a transactionally related felony (see footnote 5), the State has conceded in this appeal that it cannot prove at trial that Powers violated § 940.225(2)(g) because the statute does not apply to him. The charge under § 940.225(2)(g) must be dismissed.[11]

---

"patient" includes any one who "[r]eceives care or treatment from a facility or program." Section 940.225(5)(am)1. The legislature may wish to clarify whether it intends that § 940.225(2)(g) apply to conduct occurring at locations other than the premises of the identified facilities, or at times when the "patient" is not an admitted inpatient or resident of a covered facility or program. Finally, should § 940.225(2)(g) receive future legislative attention, we note that Powers asserts in his brief that there is no express "marital exception" to coverage of the statute, see § 940.225(6), or one for conduct occurring outside what he refers to as "the scope of employment," as he argues there should be.

[11] Because we conclude that Wis. Stat. § 940.225(2)(g) does not apply to an employee of a hospital that is not state licensed or approved, we do not address Powers' alternative arguments that his alleged conduct falls outside the reach of § 940.225(2)(g) because it did not occur within the scope of his employment, and that forcing him to defend both charges violates his constitutional right to due process.

## CONCLUSION

¶ 21.   For the reasons discussed above, we reverse the appealed order and remand for further proceedings consistent with this opinion. We direct that on remand, the court shall dismiss count one of the information, alleging a violation of WIS. STAT. § 940.225(2)(g).

*By the Court.*—Order reversed and cause remanded with directions.