STATE of Wisconsin, Plaintiff-Respondent,

v.

James Lee EADY, Jr., Defendant-Appellant.†

Court of Appeals

*No. 2015AP110–CR. Submitted on briefs October 6, 2015.—Decided December 22, 2015.*

**2016 WI App 12**

(Also reported in 875 N.W.2d 139.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dustin C. Haskell*, assistant public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Sandra L. Tarver*, assistant attorney general.

Before Curley, P.J., Brennan, J., and Daniel L. LaRocque, Reserve Judge.

¶ 1. LaROCQUE, J. James Lee Eady, Jr., appeals the judgment convicting him of robbing a financial institution, a U.S. Bank, contrary to Wis. Stat. § 943.87 (2011–12).[1] He argues that the evidence was insufficient to prove a required element of this crime, that the bank was chartered under either state or federal law. Although the State did not offer direct evidence of the bank's charter, we conclude that the circumstantial evidence was sufficient to support the jury's verdict and affirm the conviction.

## BACKGROUND

¶ 2. In December 2011, the State charged Eady with robbing a financial institution, a crime created by the legislature as part of Subchapter IV, Crimes Against Financial Institutions, 2005 Wis. Act 212. According to the complaint, on November 21, 2011, Eady entered the U.S. Bank branch on West Capitol Drive in Milwaukee and gave the teller a note reading in part, "[G]ive me the money. I'm not playin, I will blow your head off right now . . . $10,000.00." In response, the teller, M.G., unlocked her money drawer and placed banded bundles of money under the security window. Eady took the money and left. The teller eventually identified Eady in an in-person line-up.

¶ 3. Eady pled not guilty, and the case proceeded to a jury trial. M.G. testified to her official title, supervisor of the Midtown branch of U.S. Bank, and she identified an exhibit showing the branch to be a

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

U.S. Bank. She also identified pictures of the teller window where she worked on the day of the robbery. Exhibit 4 showed a "FDIC"[2] sign in this window and in the adjacent window as well. Exhibit 7 showed Eady at the teller window, with the FDIC sign just inches from his body and easily within his line of sight. M.G. testified that until Eady arrived at her window at about 9:30 a.m., everything was normal and that she serviced customers, took phone calls, and performed her daily duties as a bank supervisor.

¶ 4. M.G. then described the robbery. Eady came to the teller window, passed her the aforementioned note, and it took her awhile to collect her thoughts because she "couldn't believe [what] was happening." She identified Eady for the jury, said she gave him the money from her drawer, and later determined that he had taken about $1500.

¶ 5. Numerous other witnesses also testified, including the bank manager, R.Z. She confirmed via a security staff audit of M.G.'s teller drawer that $1500 was missing. In addition, a Milwaukee Police Officer found the same jacket, hat, and sweatshirt that Eady had been wearing—as seen in the surveillance video and photos from the incident—in a yard near the bank. Found in a jacket pocket was a U.S. Bank deposit slip, which a State Crime Lab analyst said contained DNA matching samples of Eady's DNA.

¶ 6. There being no pattern jury instruction, the trial court, with the approval of both parties, gave the jury the following instruction regarding the elements of the charged crime:

---

[2] "FDIC" stands for the Federal Deposit Insurance Corporation.

Robbery as defined in section 943.87[3] of the Wisconsin statutes is committed by one who, with the intent to steal, takes in the presence of an individual property that is . . . under the custody and control of a financial institution . . . by threatening the imminent use of force . . . . Before you may find the defendant guilty of this offense, the State must prove . . . beyond a reasonable doubt that . . . U.S. Bank is a financial institution which is owned or had custody and control of U.S. currency. *Financial institution means a commercial bank whether chartered under the laws of this state, another state or the United States.*

(Emphasis added; some punctuation added.) Thereafter, defense counsel moved to dismiss, arguing that the State failed to introduce any evidence that the owner of the stolen money was a chartered bank. The trial court denied the motion, and the jury found Eady guilty. Eady now appeals.

### ANALYSIS

¶ 7. On appeal, Eady renews his argument that the evidence was insufficient to convict him of robbery

---

[3] WISCONSIN STAT. § 943.87 provides: "Whoever by use of force or threat to use imminent force takes from an individual or in the presence of an individual money or property that is owned by or under the custody or control of a financial institution is guilty of Class C felony."

WISCONSIN STAT. § 943.80(2) provides, as relevant: " 'Financial institution' means a bank, as defined in s. 214.01(1)(c), . . . whether chartered under the laws of this state, another state or territory, or under the laws of the United States . . . ."

WISCONSIN STAT. § 214.01(1)(c) provides: " 'Bank' means a commercial bank chartered by the U.S. comptroller of the currency or organized under ch. 221."

of a financial institution. The standard of review we apply is well known:

> Evidence is insufficient to support a conviction only if the evidence, when viewed most favorably to the State, "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." . . . [T]he defendant bears a heavy burden in attempting to convince a reviewing court to set aside a jury's verdict on insufficiency of the evidence grounds.

*State v. Booker*, 2006 WI 79, ¶ 22, 292 Wis. 2d 43, 717 N.W.2d 676 (internal citations omitted). On appeal, the State "is not required to convince the members of this court of guilt beyond a reasonable doubt." *See State v. Kitowski*, 44 Wis. 2d 259, 262, 170 N.W.2d 703 (1969). Rather, "[o]ur duty is merely to ascertain from the record whether 'the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.' " *See id.* (citation omitted).

¶ 8. Eady argues that there was no evidence introduced to show that U.S. Bank was in fact a chartered bank as required by the statute. Eady argues that without documentary evidence of the bank's charter or testimony by someone having "personal knowledge" of the bank's charter, the evidence was insufficient to prove the bank met the definition of a "financial institution."

¶ 9. In support of his appeal, Eady cites *State v. Powers*, 2004 WI App 156, 276 Wis. 2d 107, 687 N.W.2d 50. In *Powers*, this court reversed the trial court's denial of a motion to dismiss a charge of sexual assault

of a patient, *see* WIS. STAT. § 940.225(2)(g) (2001–02), brought against Powers, a physician's assistant at the Tomah VA Medical Center. *Powers*, 276 Wis. 2d 107, ¶¶ 1–2. An element of the charge required the State to prove that the Center was an "inpatient health care facility." *Id.*, ¶ 9. According to the relevant statutes, that meant proof that the Center was licensed by the Department of Health and Family Services. *Id.* The State agreed that the Center was not licensed, *see id.*, ¶ 6, and we held that the motion to dismiss should have been granted, *id.*, ¶¶ 20–21. Given the plain language of the statue and the undisputed fact that the Center was not licensed, this court rejected the State's argument that it was "absurd" to criminalize sexual assault of a patient "only" if the facility was licensed by the State. *See id.*, ¶ 19.

█

¶ 10. In stark contrast to the facts in *Powers*, the State in this case did not agree that the bank was not chartered, but contends that the circumstantial evidence raises a sufficient factual inference that U.S. Bank was properly chartered. We agree. Contrary to Eady's contention that the law requires either introduction of the charter itself or testimony from a witness with "personal knowledge" of the charter, case law holds that circumstantial evidence may suffice to prove an essential element of the crime charged. *See City of Kenosha v. Phillips*, 142 Wis. 2d 549, 558, 419 N.W.2d 236 (1988) ("This burden can be satisfied in the same way that any burden of proof can be—by direct, demonstrative, testimonial, or circumstantial proof, and even upon the basis of judicial notice, if properly taken."); *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990) ("It is well established that a finding of guilt may rest upon evidence that is entirely

circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence."); *State v. Wilson*, 41 Wis. 2d 29, 31, 33–34, 162 N.W.2d 605 (1968) (prostitution conviction upheld even though there was "no direct evidence . . . that the defendant was not married to the complainant or that she specifically offered to have sexual intercourse with him."); *State v. Van Buren*, 2008 WI App 26, ¶¶ 9–14, 307 Wis. 2d 447, 746 N.W.2d 545 (rejecting defendant's claim that there was insufficient evidence to prove he possessed child pornography because the State did not present expert testimony that the pornographic pictures were of real children and not computer-generated images).

¶ 11. Eady's reply brief argues the possibility that absence of direct evidence of a charter could lead to conviction for robbing "a fake bank." He also cites recent developments in the banking industry that provide financial services, citing PayPal, Google Wallet, Bitcoin, and Walmart's NewGoBank. He suggests that although these institutions are not chartered banks, if subject to theft or fraud, a jury could "easily conclude that the defendant committed an offense against a financial institution." We need not address hypothetical fact situations and limit our holding to the evidence presented to this jury. This evidence raises neither any inference of a fake bank nor of an unchartered bank. It is sufficient to note that circumstantial evidence under one set of facts may be and often is stronger than direct evidence while in another it may be weak and insufficient to support proof beyond a reasonable doubt. *See Poellinger*, 153 Wis. 2d at 501.

¶ 12. We conclude the circumstantial evidence of a chartered bank here—including evidence regarding

the day-to-day operation of the bank, the U.S. Bank deposit slip found in the clothing discarded near the bank, and the numerous signs indicating that the bank was a "U.S. Bank" insured by the FDIC—was sufficient in probative value and force such that it cannot be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *See Booker*, 292 Wis. 2d 43, ¶ 22. Therefore, for all the foregoing reasons, we affirm the judgment.

*By the Court.*—Judgment affirmed.