COURT OF APPEALS
DECISION
DATED AND FILED

March 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP189-CR**

Cir. Ct. No.  **2019CF282**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JUAN L. PLUNKETT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County:  JOHN D. HYLAND, Judge.  *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Juan Plunkett appeals a judgment of conviction for robbery of a financial institution.  He also appeals the circuit court's order denying his motion for postconviction relief.   He argues that:   (1) the evidence was insufficient to support the jury's guilty verdict; and (2) trial counsel was ineffective by failing to file a motion to suppress identification evidence.  We reject these arguments and affirm.

*Sufficiency of the Evidence*

¶2      Whether the evidence was sufficient to sustain a guilty verdict is a question of law subject to de novo review, *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410, but we may not overturn the verdict "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt," *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).   The jury is free to draw reasonable inferences from the evidence, *see id.* at 506, but it "may not indulge in inferences wholly unsupported by any evidence," *State ex rel. Kanieski v. Gagnon*, 54 Wis. 2d 108, 117, 194 N.W.2d 808 (1972).

¶3      Here, the jury found Plunkett guilty of robbery of a financial institution, contrary to WIS. STAT. § 943.87 (2021-22).[1]  Consistent with the statute, the jury was instructed that one of the elements the State had to prove was that the establishment Plunkett was accused of robbing, Avestar Credit Union, is a

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

"[f]inancial institution." *See* § 943.87.[2] The jury was also instructed that "[f]inancial institution" means "a credit union chartered under the laws of this state, another state or territory or under the laws of the United States." *See* WIS JI— CRIMINAL 1522.

¶4 Plunkett focuses on this "financial institution" element and the jury instruction requirement that the institution must be "chartered." He contends that the evidence was insufficient to prove that Avestar is a chartered institution because there was no direct evidence that Avestar is chartered, such as documentary evidence of a charter or witness testimony that Avestar is chartered. We disagree that such evidence was required.

¶5 In *State v. Eady*, 2016 WI App 12, 366 Wis. 2d 711, 875 N.W.2d 139, the jury received a similar instruction, *id.*, ¶6,[3] and we concluded that the State was not required to introduce "the charter itself or testimony from a witness with 'personal knowledge' of the charter," *id.*, ¶10. We said in *Eady* that "circumstantial evidence" may be enough, *id.*, ¶¶10, 12, and we concluded that "evidence regarding the day-to-day operation of the bank, [a] U.S. Bank deposit slip found in the clothing discarded near the bank, and the numerous signs indicating that the bank was a 'U.S. Bank' insured by the FDIC" was sufficient in that case.[4] *Id.*, ¶12.

---

[2] WISCONSIN STAT. § 943.87 states: "Whoever by use of force or threat to use imminent force takes from an individual or in the presence of an individual money or property that is owned by or under the custody or control of a financial institution is guilty of Class C felony."

[3] The instruction in *State v. Eady*, 2016 WI App 12, 366 Wis. 2d 711, 875 N.W.2d 139, read as follows: "Financial institution means a commercial bank whether chartered under the laws of this state, another state or the United States." *Id.*, ¶6 (emphasis removed).

[4] "'FDIC' stands for the Federal Deposit Insurance Corporation." *Eady*, 366 Wis. 2d 711, ¶3 n.2.

¶6 In this case, there was similar if not stronger evidence before the jury on the "financial institution" element. Two Avestar employees, D.D. and E.E.,[5] each testified that Avestar has more than one branch, and each agreed that her job can be described as a "teller." E.E. testified that the job duties include opening accounts, handling money, and responding to whatever banking needs customers might have. The evidence included a photo showing that Avestar has teller stations and signs posted that read "Avestar Credit Union" and "NCUA."[6] There were other photos showing teller drawers and what appear to be a station for customers to fill out transaction slips. Another photo shows what appears to be an ATM near the exterior entrance to Avestar, which also has a large "Avestar Credit Union" sign.[7] Additionally, D.D. expressly testified that Avestar is a "[f]inancial institution." We conclude that the evidence was sufficient under *Eady* to prove that Avestar is a chartered financial institution.

¶7 Plunkett argues that *Eady* is distinguishable because Avestar is a state-chartered credit union, not a federally-chartered bank. He argues that an "NCUA" sign at a credit union is not proof of a state charter in the same way that an "FDIC" sign at a bank may be proof of a federal charter. We are not persuaded

---

[5] To protect their privacy, we refer to victims using initials that do not correspond to their own. *See* WIS. STAT. RULE 809.86(4).

[6] "Created by the U.S. Congress in 1970, the National Credit Union Administration [NCUA] is an independent federal agency that insures deposits at federally insured credit unions, protects the members who own credit unions, and charters and regulates federal credit unions." NATIONAL CREDIT UNION ADMINISTRATION, https://ncua.gov/About (last visited March 18, 2024).

[7] The relevant photo of the exterior entrance is slightly blurry, but the State asserts that the photo shows an ATM, and Plunkett does not dispute this assertion.

that these differences make *Eady* inapplicable here or that they represent meaningful distinctions under *Eady*.

*Ineffective Assistance of Counsel—Identification Evidence*

¶8      We turn to Plunkett's ineffective assistance of counsel argument. This argument relates to D.D.'s and E.E.'s identifications of Plunkett. D.D. and E.E. were both working at Avestar when the robbery occurred, and they each identified Plunkett as one of the robbers after viewing a photo array, and they each also identified Plunkett in court.[8] Plunkett argues that the photo arrays were impermissibly suggestive and that trial counsel was ineffective by failing to move to suppress D.D.'s and E.E.'s identifications. For the reasons that follow, we disagree.

¶9      To demonstrate ineffective assistance of counsel, a defendant must establish both (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶10      Our review of a claim for ineffective assistance of counsel presents a mixed question of law and fact. *State v. Ward*, 2011 WI App 151, ¶9, 337 Wis. 2d 655, 807 N.W.2d 23. We will not overturn a circuit court's factual findings unless

---

[8] D.D. and E.E. were shown different photo arrays. The arrays are included in the record before us on appeal.

the findings are clearly erroneous, but we review de novo the ultimate questions of whether counsel performed deficiently and, if so, whether counsel's performance prejudiced the defense. *Id.*

¶11 In deciding whether counsel performed deficiently by failing to file a suppression motion, we consider the merits of the motion that counsel could have filed. A defendant moving to suppress evidence based on an impermissibly suggestive identification procedure bears an initial burden to demonstrate that the procedure was impermissibly suggestive. *State v. Roberson*, 2019 WI 102, ¶4, 389 Wis. 2d 190, 935 N.W.2d 813. Only if the defendant makes this showing does the burden shift to the State to establish that the identification is still reliable. *Id.*

¶12 Here, we conclude that Plunkett has not shown that he could have met this initial burden to demonstrate that the photo arrays were impermissibly suggestive. Therefore, he has also not shown that counsel performed deficiently.

¶13 Plunkett's argument that the photo arrays were impermissibly suggestive relates to D.D.'s and E.E.'s descriptions of the one of the robbers' faces. As recounted in Plunkett's appellant's brief, D.D. and E.E. provided descriptions of the robber that, between the two of them, included all of the following: "[l]ike little black dots" on his face, "black dots all over his face," "blemishes kind of on his cheeks," "pot [sic] marks on his face and bumpy brown spots," and a "very terrible" skin complexion. Plunkett argues that the arrays were impermissibly suggestive because he was the only subject in the arrays with black dots all over his face.

¶14 "[A] photograph procedure 'which includes a photo which is unique in a manner directly related to an important identification factor may be held impermissibly suggestive.'" *State v. Mosley*, 102 Wis. 2d 636, 654, 307 N.W.2d 200 (1981) (quoted source omitted). However, the presence of a unique identifying

feature in the defendant's photo does not, by itself, satisfy a defendant's burden to prove that a photo array was impermissibly suggestive. *Id.* Rather, courts undertake a case-by-case analysis to determine whether the array was impermissibly suggestive based on the totality of the circumstances. *Powell v. State*, 86 Wis. 2d 51, 63, 271 N.W.2d 610 (1978).

¶15   The parties agree that there was an "important identification factor" here, *see Mosley*, 102 Wis. 2d at 654, but they disagree on what exactly that factor was and whether the police reasonably accounted for it. Plunkett maintains that the important identification factor was that he had black dots all over his face. He acknowledges that all of the other subjects in the photo arrays had "dots, shadows, scars, creases or other marks on their faces," but he argues that this was not sufficient to prevent the arrays from being impermissibly suggestive.

¶16   As we understand the State's argument, it maintains that the important identification factor was the presence of facial markings that could have matched D.D.'s and E.E.'s descriptions. The State points out that D.D. and E.E. used varying terms to describe the markings and that nearly every subject in the photo arrays had facial markings of some kind. It also argues that the photos show that the police took additional steps to mitigate the risk of suggestiveness. The State argues that Plunkett has therefore not met his burden to show that the arrays were impermissibly suggestive.

¶17    The circuit court agreed with the State, and so do we.[9] As explained in detail in the circuit court's postconviction decision, the other subjects in the photo arrays each had "some nature of blemish, dot, mark or other flaw" on their faces, and several of the subjects had marks that could be considered "black dots." Additionally, the photos appear to have been selected to match Plunkett's characteristics in other important respects, so that he would not unduly stand out. All of the subjects appear to be Black and have a roughly similar skin tone, all appear to fall within in a similar age range, and all have a goatee-style facial hair pattern.

¶18    As the circuit court noted, the nature and extent of the "dots," blemishes, or marks on each subject's face in the photos varies from person to person, but the photos on the whole demonstrate that the police took reasonable steps to account for facial markings and other identifying characteristics. The police were not required to find subjects whose facial markings were indistinguishable from Plunkett's. *See Powell*, 86 Wis. 2d at 67 (Although police "'are required to make every effort reasonable under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification,'" they are "'not required to conduct a search for identical twins in age, height, weight or facial features.'" (quoted source omitted)).

---

[9] There is case law suggesting that we must defer to circuit court factual findings that resolve disputed matters relating to photographic evidence, even when the evidence is available for our review and can be examined by this court as well as the circuit court. *See Phelps v. Physicians Ins. Co.*, 2009 WI 74, ¶38 n.10, 319 Wis. 2d 1, 768 N.W.2d 615; *State v. Walli*, 2011 WI App 86, ¶14, 334 Wis. 2d 402, 799 N.W.2d 898. We conclude that our decision here would be the same regardless of whether we defer to the circuit court's factual findings relating to the photo arrays. The ultimate question of whether a photo array is impermissibly suggestive is a question of law for our de novo review. *See State v. Benton*, 2001 WI App 81, ¶¶5, 10, 243 Wis. 2d 54, 625 N.W.2d 923.

¶19   In sum, for the reasons stated above, we affirm the judgment of conviction and the order denying Plunkett's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.