UNITED STATES of America,
Plaintiff-Appellee,

v.

Barry Eugene ANDERSON,
Defendant-Appellant.

No. 82–2836.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1983.
Decided July 21, 1983.

Michael W. Bosch, Bammer, Stodola & Bosch, Hammond, Ind., for defendant-appellant.

Evan M. Spangler, Asst. U.S. Atty., R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and ROSENN, Senior Circuit Judge.*

* The Honorable Max Rosenn, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant Anderson appeals from his conviction (and sentence of ten years incarceration), after a jury trial, of armed bank robbery under 18 U.S.C. § 2113(a), contending that witness' in-court identifications of him were not shown to rest on a basis sufficiently independent of an admittedly illegal lineup, as required under *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); that a photographic array presented to witnesses in the course of the investigation was unnecessarily suggestive and conducive to misidentification, thus denying him due process under *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and that, even if the conviction were affirmed, the trial court erred in failing to explicitly determine whether defendant could derive benefit from treatment under the Federal Youth Corrections Act. We affirm the conviction, but remand to the district court for the limited purpose of permitting it to determine on the record whether defendant would in fact derive no benefit from treatment under the Act, as his original ruling seemed to suggest.

## I.

Defendant's conviction arose from the April 1, 1982 robbery of the Hoosier State Bank in Hammond, Indiana. The Government's evidence against defendant consisted primarily of the presence of his fingerprints on the robbed teller's window which was cleaned the previous evening and on the rear door of the bank, and of the in-court identification of the defendant by the threatened bank teller and a bank customer present at the time of the robbery. Vickie Grimmer, the teller, testified that the robbery was committed by a black male in his early twenties with no facial hair who wore clear prescription glasses; this individual approached her teller window, produced an automatic pistol, and demanded money. With the exception of approximately 45 seconds during which she removed the demanded cash from a drawer, witness Grim-

mer testified that she had the opportunity to view the robber for two and one half to three minutes, including his ingress and egress. This witness further testified that lighting conditions in the bank on the day in question were very good and that her view of the robber was unobstructed. The witness unequivocally identified Anderson in court as the robber.

The other principal eyewitness, Daniel Wojcik, testified that while doing business in the bank he first observed the robber for 20 to 25 seconds in good lighting enter the bank and walk to the teller's window. Upon completing his business, the witness approached the rear doors of the bank, heard footsteps running towards him, turned and observed a person running toward him for a "couple of seconds," and was almost knocked over as this person ran toward the rear doors. Returning to the bank to inquire what had happened and being informed of the robbery, witness Wojcik then exited the bank in an effort to locate the robber and determine his direction of flight; he managed to observe the robber from a 40 or 50 foot distance, crossing a street. At trial, witness Wojcik described the robber in terms similar to those used by witness Grimmer, with the exception that he described the robber's glasses as dark rather than clear, the robber's face as having very light and sparse facial hair, and the robber's age as in his early thirties. At trial, witness Wojcik identified defendant Anderson as the man he observed both in, and hurriedly exiting from, the bank.

As part of the FBI investigation of this case, immediately after the robbery witnesses Wojcik and Grimmer were shown photograph arrays which did not contain a picture of the defendant; they failed to identify any of the likenesses as representing the robber. Subsequently, witness Grimmer was again shown an array of photographs not including the defendant, and she again reported that none of them pictured the robber. Finally, on July 12 and 13, respectively, Wojcik and Grimmer were shown photograph arrays containing a pic-

ture of the defendant; both identified his photo as the likeness of the robber. As a further part of the investigation, the FBI conducted a lineup on July 23, at which defendant's already-appointed counsel was not present; at that lineup, both Wojcik and Grimmer corporeally identified defendant as the bank robber.

Prior to the trial, defendant moved to suppress evidence of the July 12 and 13 photographic identification sessions as unnecessarily suggestive and conducive to mistaken identification and to suppress evidence of the lineup as well. At the pre-trial hearing, the Government conceded that the lineup without presence of defense counsel violated defendant's Sixth Amendment rights and stipulated that the lineup results would not be used as evidence. The Government then informed the court that the only remaining issues to be addressed by the hearing were the admissibility of the photographic identification evidence and whether there was any independent basis for the witnesses' in-court identification of defendant, apart from the illegal lineup, sufficient to permit such identification under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1963). After the hearing, which explored the circumstances of the photograph identification sessions and the collateral opportunities (other than the photograph identification session and the lineup) which the witnesses had to observe defendant in the course of the robbery, the trial court ruled that the photographic arrays were not suggestive or improper and hence admissible, and, while making no explicit ruling as to whether the Government had sufficiently established an alternative *Wade* basis for in-court identification, approved, without defendant's objection, the stipulation under which the Government would merely make no direct mention at trial of the lineup.

II.

Defendant first challenges his conviction on the basis that the trial court erred in allowing in-court identification of the defendant by witnesses Grimmer and Wojcik,

arguing that the Government failed to "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than lineup identification," *United States v. Wade,* 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149. In *Wade,* the Supreme Court outlined several factors to be considered in determining whether an alternative observational route was established: the prior opportunity of the witness to observe the criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to the lineup of a different person, the identification by photograph of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. *Wade,* 388 U.S. at 241, 87 S.Ct. at 1939–1940. This court has found the existence of a sufficient alternative foundation for in-court identification even where a small number of these factors are present. *See, e.g., United States ex rel. Harris v. State of Illinois,* 457 F.2d 191, 194 (7th Cir.1972) (*Wade* test satisfied where witness observed defendant at scene for one minute and never identified another as perpetrator).

■ Here, however, the pre-trial hearing and trial testimony established the presence of *numerous Wade* -specified ameliorating factors. Witness Grimmer had the opportunity to observe the robber closely and unobstructedly for between two and one half and three minutes under excellent lighting conditions, enabling her to recall numerous details of the robber's physical appearance and movement; her physical descriptions closely matched defendant's actual physical description; and she identified the defendant as the robber from his photograph prior to the lineup and never identified another as the perpetrator from photographs in previous photograph array sessions. Likewise, witness Wojcik observed the robber under good lighting at a distance of 20 feet for nearly half a minute as he entered the bank and approached the teller window, again

confronted the robber's face directly for two or three seconds as the robber ran towards and then past him, and got a third glimpse of the robber outside of the bank; his physical description of the robber closely matched the defendant's appearance; and he identified defendant from photographs prior to the lineup and never identified another person as the robber in previous arrays not containing defendant's photograph. It is true that there were some discrepancies between Wojcik's and Grimmer's description of the robber: Grimmer estimated him as being in his early twenties, with clear glasses and no facial hair, while Wojcik described the robber as in his early thirties with "very, very light" facial hair and dark glasses. We note, however, that Wojcik observed the robber most directly in the darkened rear passageway of the bank, where the glasses may well have appeared darker, and that the other discrepancies are quite subtle and pale in significance when weighed against the length and directness of the observational opportunities, the otherwise identical physical descriptions, and the unequivocal nature of the photographic and in-court identifications. We have no doubt that the Government adduced clear and convincing evidence of collateral trustworthiness ample to satisfy the strictures of *Wade.*

■ Defendant correctly notes that, at the close of the pretrial hearing which was directed at the establishment of an alternative foundation for in-court identification and the evaluation of the propriety of the photographic identification sessions, the trial court made no explicit ruling that the *Wade* test had been satisfied, but instead simply paused to confirm that the Government would use no lineup identification evidence and then stated, "Okay." We think it reasonable to infer that this last affirmation, following on the heels of an extensive hearing which focussed on the *Wade* indicia, may be taken as a tacit finding by the trial court that an adequate alternate foundation had been laid under *Wade,* especially in light of the trial court's later curt overruling of defendant's foundational objection to in-court identification. However, even if

the trial court did not resolve this issue, such a lapse would not amount to reversible error, for it is open to this court on review to determine whether the requirements of *Wade* were satisfied, at least where, as here, the record on this point is adequate and was indeed carefully constructed to facilitate passage on this issue. *United States ex rel. Harris v. State of Illinois,* 457 F.2d 191, 195–96 (7th Cir.1972).

### III.

■ Defendant next argues that the procedures used at the photographic identification sessions of July 12 and 13 at which his photograph was culled by the witnesses were so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," thus violating his right to due process under *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Court in *Simmons* mandated an inquiry into the facts of each case, including an assessment of the necessity of the photographic identification session (such necessity being more likely present where a serious felony has been committed and the perpetrator is still at large, 390 U.S. at 384–85, 88 S.Ct. at 971–972), and the possibility of misidentification. With respect to the latter assessment, the Court offered several indicia of trustworthiness of such a photographic session, including the well-lighted setting of the robbery, the maskless state of the robber, the opportunity of the witnesses to observe the robber for several minutes, the witnesses' isolation in viewing the photographs, the lack of evidence that witnesses were told anything about the progress of the investigation or were told that any particular subject displayed was under suspicion, the fact that all the witnesses unequivocally identified the defendant and, notwithstanding cross-examination, unhesitatingly re-identified the defendant at trial. *Simmons,* 390 U.S. at 385–86, 88 S.Ct. at 971–972.

Similarly, here the witnesses testified that the robber's face was observed closely and unobstructedly in good light for periods

of up to three minutes, and that the investigators never attempted to influence their photographic selections; further, all the identifications were affirmed in court unequivocally. Nor is there any evidence that the investigators told the witnesses of the status of the investigation or suggested that any pictured subject was under suspicion. Additionally, and unlike in *Simmons,* the witnesses here had previously been presented with an array not including defendant's likeness, and had failed to identify any pictured person as the robber, thus further buttressing the reliability of the successful session. Moreover, as in *Simmons,* it is not disputed that the photographic array here was necessary, as a serious felony had been committed and the perpetrator was still at large, 390 U.S. at 384–85, 88 S.Ct. at 971–972.

The defendant here argues that the reliability of the final photographic array was compromised by its occurrence nearly three months after the event and by the fact that defendant's likeness was the only one unadorned, in accordance with the witnesses' previous descriptions, with facial hair. We note that, despite the eventual delay in the viewing of defendant's photograph, the FBI had presented an array to the witnesses immediately after the robbery, but they failed to identify the robber in that array; thus, early in the investigation, the witnesses had the opportunity to crystallize, if only negatively, their visual impressions of the felon. We also note that, while the defendant's was the only fully clean-shaven likeness presented in the last photographic session, a reasonable witness would likely take into account the fact that facial hair is an evanescent trait and would thus focus more closely on basic features that were previously observed at close range. Also, one of the witnesses testified that the robber sported light facial hair, and our independent examination of the photographic array reveals light facial hair on another of the pictured persons; moreover, it has not been established that there was no clean-shaven likeness presented in the previous photographic arrays. As in *Simmons,* where the identification procedures were arguably far more troublesome (there the defendant's likeness was included several times within a given series), we find that, even though the identification procedures employed here may have in some respects "fallen short of the ideal," 390 U.S. at 385–86, 88 S.Ct. at 971–972, the totality of the circumstances, including the excellent opportunity for observation at the scene and the lack of pressure applied in the identification session, suggests that the identification of the defendant was not mistaken.

## IV.

Finally, as the Government concedes, the defendant, 20 years old at the time of the robbery, was eligible for sentencing under the Federal Youth Corrections Act. Under the Act, prior to imposing a regular adult sentence, the trial court must explicitly determine that the offender may not be able to derive "maximum benefit" from youth treatment. 18 U.S.C. § 5010(c); *Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052–3053, 41 L.Ed.2d 855 (1977). The Government concedes that the trial court failed here to make such an explicit determination, as required under *Dorszynski,* and thus agrees that further consideration of this matter by the trial court is necessary. Like the First Circuit in *United States v. Fortes,* 619 F.2d 108, 127 (1st Cir.1980), we think the proper course in such circumstances is to remand this case to the district court to allow it to indicate, within thirty days, if it so believes, that the defendant would not derive "maximum benefit" from sentencing under the Federal Youth Corrections Act; if such an explicit finding and order is entered within the required time, the present adult sentence shall stand. If, after the thirty day period has passed, no such explicit finding is reported by the trial court, defendant's adult sentence shall be vacated and defendant shall be ordered brought before the trial court for resentencing. We think this approach is especially warranted here since defendant's counsel stated at oral argument that he had already presented to the district court his full range of arguments favoring

youth treatment, and has no new matters to bring to the court's attention; if this were not the case, we might well find it the better practice to order fresh sentencing with an opportunity for defense counsel to be heard.

For the foregoing reasons, the defendant's conviction is affirmed, and the case is remanded to the district court for the required supplementary finding under the Federal Youth Corrections Act, as noted *supra.*

AFFIRMED IN PART AND REMANDED IN PART.