In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1292

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EDWARD W. WEST,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CR-157—**Charles N. Clevert, Jr.**, *Chief Judge.*

ARGUED OCTOBER 21, 2010—DECIDED DECEMBER 30, 2010

Before EASTERBROOK, *Chief Judge*, and MANION and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Edward W. West was
charged with two counts of armed bank robbery in vio-
lation of 18 U.S.C. §§ 2113(a) and (d), and two counts
of using a firearm during a crime of violence in viola-
tion of 18 U.S.C. § 924(c). West moved to suppress an in-
custody lineup identification on the grounds that the
lineup violated his Sixth Amendment right to counsel

and that the lineup was unduly suggestive. The district judge granted the motion, finding that the lineup was conducted without counsel for West. The court concluded, however, that the lineup witnesses would be allowed to make in-court identifications. West then entered a conditional plea of guilty and was sentenced to 230 months' imprisonment.

On appeal, West argues that the district court erred when it agreed to allow witnesses to make in-court identifications without first determining whether an in-court identification would have an independent basis and would be free from the taint of the improper lineup. West also argues that the district court improperly based his 230-month sentence on his socioeconomic status. We conclude that the district court erred by not making the findings as to the admissibility of witnesses' in-court identifications required by *United States v. Wade*, 388 U.S. 218, 240 (1967). We thus vacate West's convictions and remand for a hearing on this issue. We find no error in the district court's statements at sentencing.

*Factual Background*

On May 24, 2008, Edward West was arrested on suspicion that he had robbed two Wisconsin banks, a U.S. Bank branch in Milwaukee on May 12, 2008 and a Landmark Credit Union branch in Wauwatosa on May 23, 2008. While West was in custody, on May 27, 2008, the Milwaukee police administered an in-custody lineup for the two witnesses to the U.S. Bank robbery. The same

day, the Wauwatosa police administered the same lineup for three witnesses to the Landmark Credit Union robbery. West was not represented by counsel in either lineup. Three witnesses identified West as the bank robber. A federal grand jury then returned a four-count indictment against West.

West moved to suppress the pre-indictment lineup identifications, claiming that they violated his Sixth Amendment right to counsel and that the lineups were unduly suggestive. Following an evidentiary hearing, the magistrate judge issued a report recommending that the lineups and all evidence obtained as a direct result of the lineups be suppressed because they had been conducted in violation of West's Sixth Amendment right to counsel, as interpreted in *Wade*. The magistrate judge also concluded that the lineups as conducted were not unduly suggestive. Both parties objected to the magistrate judge's report and recommendation. The government raised the in-court identification issue for the first time, arguing under *Wade* that there was an independent basis for each witness's in-court identification of West, so that the witnesses should be allowed to testify if the case proceeded to trial. West responded that the lineups were unduly suggestive, that any in-court identification by the three witnesses would be tainted by the unconstitutional lineup procedure, and that the government was responsible under *Wade* for showing by clear and convincing evidence that there was an independent basis for an in-court identification. Neither the magistrate judge nor the district court judge held a hearing on the *Wade* in-court identification issue.

The district judge ultimately adopted the magistrate judge's recommendation that West's right to counsel had been violated and that the lineup was not unduly suggestive. In addition, the district judge stated that he would allow an in-court identification, but without making any specific findings required by *Wade* after a Sixth Amendment violation in a lineup. West then entered a conditional plea of guilty that reserved his right to appeal the in-court identification ruling, and the district court sentenced West to 230 months in prison, below the advisory guideline range.

*Analysis*

I.   *Finding an Independent Basis for In-Court Identification under Wade*

The appellant challenges his convictions on the basis that the district judge made no finding under *Wade* as to the admissibility of the planned in-court identifications. The Supreme Court held in *Wade* that, where a lineup has been suppressed as unlawful, "a per se rule of exclusion of courtroom identification would be unjustified." *Wade*, 388 U.S. at 240. To allow a witness to make an in-court identification after an uncounseled lineup identification, however, the government must show by clear and convincing evidence that there is an independent basis for a witness's in-court identification. *Id.* at 240-41; accord, *Gilbert v. California*, 388 U.S. 263, 272 (1967); *United States v. Anderson*, 714 F.2d 684, 686-87 (1983); *United States ex rel. Harris v. State of Illinois*, 457 F.2d 191, 194 (7th Cir. 1972).

In *Wade*, the Supreme Court outlined critical factors for a court to consider in deciding whether there exists an independent basis for identification, including "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." 388 U.S. at 241; see also *Anderson*, 714 F.2d at 686 (applying *Wade* factors). The issue here, where the lineup was suppressed as unconstitutional, is whether the district court made the requisite *Wade* finding as to the admissibility of the in-court identifications.

Although decisions to admit evidence are generally reviewed under an abuse of discretion standard, admissions of identifications are subject to a hybrid standard of review that we have described as de novo review "with due deference to findings of historical fact." *United States v. Harris*, 281 F.3d 667, 669-70 (7th Cir. 2002). Here, the sole question is the legal one, whether the court made the requisite legal finding, so our review is de novo. *Id*.

The government argues that the district court twice made *Wade* findings as to the admissibility of the in-court identification. We disagree. While the district judge twice made statements acknowledging that he would allow witnesses to make in-court identifications of West,

he made no *Wade* finding. First, at an evidentiary hearing on an unrelated issue, the district court adopted the magistrate judge's findings and remarked that in-court identification was permissible, stating:

> I do not believe the government has shown that the magistrate judge's ruling is incorrect. I don't believe that—well, the lineup should have been conducted with an attorney there, it certainly was not, but there was nothing about the lineup, the way it was conducted, to suggest that an in-court identification of the defendant would be tainted; hence, it is possible for an in-court identification to occur.

In drawing that conclusion, the district court made no finding under *Wade* nor did it explicitly consider the relevant *Wade* factors. West argues that he was confused by the district court's statement as to the in-court identification and thus sought clarity on the issue before pleading guilty to the bank robberies. At the request of West's counsel at the change of plea hearing, the district judge again commented on his decision to allow an in-court identification:

> This is a case where witnesses were given the opportunity to identify Mr. West in a lineup. The court concluded that notwithstanding the problems with the lineup, the witnesses may testify at trial. This does not mean that is any foregone conclusion that the witnesses who testify at trial will be able to identify Mr. West, and that was one of the points I was trying to make in my ruling.
>
> Witnesses obviously will come to court and will be given an opportunity to determine whether or not

they can indeed identify the defendant. The prior contact with the defendant has not been—was not shown to be such that the witnesses should be precluded from being given the opportunity to view the defendant and determine if he is indeed the person they saw and the person they would implicate as one of the bank robbers. So that was the essence of the court's decision.

These are the district judge's only statements about the admissibility of the in-court identification of West. Neither statement recognized that the government bore the burden of proof on the issue, and by clear and convincing evidence. The district court never made a finding that the government had shown by clear and convincing evidence that a potential in-court identification would be based on observations of the suspect other than from the in-custody lineup, and at no time were the *Wade* factors addressed explicitly. There simply were no findings of fact by the district court as to the admissibility of the in-court identification.

The government requested that both the magistrate judge and the district judge make a *Wade* finding, but the fact remains that neither did so. The government argues that the district court's consideration of the *Wade* factors is implicit in its statements, but we disagree. The district judge's statements seem merely to be agreeing with the magistrate judge that the lineup was not unduly suggestive under *Neil v. Biggers*, 409 U.S. 188 (1972), rather than making a finding that there was an independent basis for the in-court identification. That analysis is not sufficient to comply with *Wade*.

The government argues that there is sufficient reliable evidence in the complaint and witness testimony before the magistrate judge to show that there was an independent basis for an in-court identification. In essence, the government asks that this court make the *Wade* finding in the first instance. We decline to do so. The government argues that under *United States v. Anderson*, we should conduct a de novo review and look to the record, including the testimony before the magistrate judge, to find that there was an independent basis for the witnesses' in-court identifications. In *Anderson*, we held that "even if the trial court did not resolve [the *Wade* issue with respect to in-court identification], such a lapse would not amount to reversible error, for it is open to this court on review to determine whether the requirements of *Wade* were satisfied, at least where, as here, the record on this point is adequate and was indeed carefully constructed to facilitate passage on this issue." *Anderson*, 714 F.2d at 687, citing *United States ex rel. Harris v. State of Illinois*, 457 F.2d 191, 195-96 (7th Cir. 1972) (Illinois Supreme Court could make a finding of fact as to admissibility of an in-court identification where the record "was adequate for such action").

But this case is different from *Anderson*, where there was a pre-trial hearing addressing in-court identification issues and the record was "carefully constructed to facilitate passage" on those issues. While the district court in *Anderson* made no explicit *Wade* finding, we held that it was reasonable to infer that the judge's affirmative remark following the evidentiary hearing for that very purpose meant that there was an independent basis for

an in-court identification. In those unusual circum-
stances, our decision in *Anderson* surely reached the
outer boundaries of the rare practice of federal appel-
late fact-finding. Here, unlike in *Anderson*, there was no
evidentiary hearing on the in-court identification issue.
We are in no position to make the finding in the first
instance ourselves. Accordingly, as the Supreme Court
did in *Wade*, we vacate the defendant's convictions and
remand to the district court for findings of fact under
*Wade* as to the admissibility of in-court identifications.
Depending on the outcome of that determination, the
district court may reinstate the convictions or order a
trial. See *Wade*, 388 U.S. at 242-43.

II. *Sentencing*

Although we vacate the convictions, we also address
West's sentencing argument at this time, since it is
possible the district court may reinstate his convictions.
West's advisory guideline sentencing range was cal-
culated at 272 to 319 months. Pursuant to the condi-
tional plea agreement, West was sentenced to 230 months
in prison.

In the course of the sentencing hearing, the defense
argued that West was old enough and in such poor
health that a guideline sentence would amount to a life
sentence. The district judge responded to that argument
by saying that he doubted the defendant could receive
medical care outside of prison as good as the care he
could receive inside the prison: "considering your em-
ployment history and your current circumstances, it is

certainly questionable whether or not you would get the same level of care in the community." The judge also discussed the health-care legislation then pending in Congress and concluded that "there's certainly no indication that you have independent means that you can use to obtain good and regular healthcare outside of a prison setting."

Based on these comments, West argues that the district court erred procedurally by unreasonably relying on an impermissible factor—his socioeconomic status—to justify his sentence. West argues that the discussion of his socioeconomic status violated U.S.S.G. § 5H1.10 (socioeconomic status is not relevant in determining a sentence) and 28 U.S.C. § 994(d) (requiring Sentencing Commission to make guidelines and policy statements neutral as to socioeconomic status of defendants). We disagree. The district court did not rely on an impermissible factor in sentencing or err procedurally in any other way.

In reviewing a sentence, we first look to whether the district court committed any procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009), quoting *Gall v. United States*, 552 U.S. 38, 51 (2007). If there was no procedural error, we consider whether

a sentence was substantively reasonable. *Id*. A below-guideline sentence is presumed reasonable on appeal by the defendant. *United States v. Pape*, 601 F.3d 743, 746 (7th Cir. 2010), citing *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir 2008).

The district court's discussion of West's access to health care came in the context of a broader discussion of both the defense arguments for a lower sentence and other relevant § 3553(a) factors, including the history and characteristics of the defendant, the nature of the offense, and the need to protect the community from future crimes. Section 3553(a)(2) required the court to address West's medical needs: "The court, in determining the particular sentence to be imposed, shall consider—(2) the need for the sentence imposed—(D) to provide the defendant with needed . . . medical care . . . in the most effective manner." The transcript indicates only that the district court was addressing the effect that a sentence might have on the defendant's access to medical care, which was an issue the defense had raised. When the defense raises such an issue, the district court is entitled to consider the counterfactual: what kind of medical care would be available to the defendant with a different sentence? To the extent those circumstances might be affected by wealth, income, or socioeconomic status, consideration of the defense argument cannot be turned into a Catch-22 for the district court, where it would be error not to consider and address the issue, but also error to consider the factors affecting access to medical care. We see here only proper consideration of a relevant but unpersuasive defense

argument for a lighter sentence. We find no improper consideration of West's socioeconomic status. Moreover, the district court sentenced West well below the guidelines range. We find no error.

*Conclusion*

For the foregoing reasons, the defendant's convictions are VACATED and we REMAND to the district court for a *Wade* finding and further proceedings consistent with this opinion.