COURT OF APPEALS
DECISION
DATED AND FILED

August 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1728-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF5864

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PERCY ANTIONE ROBINSON,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE A. HAVAS and LINDSEY GRADY, Judges. *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

¶1 WHITE, C.J. Percy Antione Robinson appeals from a judgment of conviction for robbery of a financial institution and the order denying his motion for postconviction relief on the basis of ineffective assistance of counsel. One of

Robinson's ineffectiveness claims was that trial counsel failed to move to exclude a lineup identification that occurred without benefit of counsel after his Sixth Amendment right to counsel had attached.[1] Upon review, we conclude that the Sixth Amendment right to counsel attaches during Milwaukee County's CR-215 process, an all-paper review during which a judicial official determines probable cause and sets bail after a warrantless arrest.[2] However, we reject his claims of ineffective assistance of counsel and his claim that there was insufficient evidence to support the conviction. We therefore affirm.

## BACKGROUND

¶2 According to the criminal complaint, on December 18, 2017, a man entered U.S. Bank on West Capitol Drive in Milwaukee and gave a note to a teller, S.D., demanding money with a threat of having a gun. S.D. gave the man the money from her till, later determined to be approximately $1,900, and the man left the bank. S.D. gave a description of the robber to Milwaukee police.

¶3 The police distributed still images from surveillance camera footage to local news media, which resulted in an anonymous caller notifying police that she recognized Robinson from the images. After further investigation, including comparing Robinson's booking photo to the teller's description and the surveillance video, the police arrested Robinson on December 19, 2017.

---

[1] We certified this issue in April 2022 to the Supreme Court of Wisconsin, which accepted the case in May 2022, but remanded it to this court after vacating the certification in May 2023.

[2] We note that the record developed here on the CR-215 form and process focused on the Milwaukee County Circuit Court; however, the form is published by the Wisconsin Court System. To the extent that the same form and process is used statewide, our holding applies.

¶4 On December 21, 2017—within forty-eight hours of the time of arrest—a Milwaukee County Circuit Court Commissioner completed a CR-215 form, signing off that the commissioner reviewed the probable cause statement from the arresting officer, found that there was probable cause to believe that Robinson committed the offense, and set bail at $35,000. The distribution list for the completed form included Robinson.

¶5 On December 22, 2017, a detective conducted a live identification lineup that included Robinson. After viewing the lineup, S.D. identified Robinson as the person she saw commit the bank robbery. On December 23, 2017, the State issued the criminal complaint charging Robinson with a single count of robbery of a financial institution.

¶6 The case proceeded to a jury trial. The State's first witness was S.D., who testified that she was having a normal day at her job as an international banker at U.S. Bank around 3 p.m. on December 18, 2017. S.D. first observed Robinson approach the station where customers pick up withdrawal, deposit and wire transfer slips. She noted that when Robinson was next in line, she was preparing to ask for help because she had never done a wire transaction. When Robinson approached her teller station, he had his cell phone to his ear and he handed her the slip of paper, on which was written, "I have a gun, give me the money." Robinson told her not to include dye packs with the money. She gave him the money in her teller drawer, he said thank you and walked away, and she then pushed the silent alarm.

¶7 S.D. testified about her memory of the clothing Robinson wore during the robbery, which included a "typical black skullcap" and a black jacket with a colored lining. She reviewed the bank's surveillance video footage from

the robbery, pointing out where Robinson was in each scene. She informed a responding police detective that she would "absolutely" be able to recognize the robber. S.D. testified about attending a live identification lineup at the police administration building. The detective informed her that it was a typical lineup and the suspect might not be among the people in the lineup. She was then shown six subjects, individually, and after each subject, the detective asked her to mark whether she identified the subject as the person who robbed the bank. She identified the fifth subject as the robber. When interviewed by a detective after the lineup, she stated that she would never forget his eyes, the shape of his nose, and the complexion of his skin. She recalled his eyes as "evil and vindictive."

¶8　S.D. testified that the subject she identified was in court as the defendant, stating his name and what he was wearing. S.D. further testified that a defense investigator visited her at the bank and showed her a series of photographs and she again identified Robinson as the person who robbed the bank.

¶9　The State's police witnesses testified about Robinson's ***Mirandized***[3] interview, during which he revealed a $100/day heroin habit and ownership of a gold Buick. A search of Robinson's residence revealed the gold Buick, which had a $100 bill on the driver's side floorboard. The detective who conducted the live identification lineup with S.D. testified that she stated she was 100% sure that the fifth subject was the robber.

¶10　Two witnesses testified that they met with Robinson on the morning of the robbery in a professional capacity. Both testified that when they met with

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

him, he was wearing the same clothes as shown on the robber in the still photographs taken from bank surveillance videos.

¶11 Robinson testified in his own defense. He testified that he is "absolutely" not the person shown in the U.S. Bank surveillance video footage and the still photographs of the robbery. He testified he had different and distinctive facial features from the man in the images. He testified that he did not have the same jacket as the man in the images.

¶12 The jury found Robinson guilty of robbery of a financial institution. The circuit court sentenced Robinson to a term of ten years, evenly bifurcated between initial confinement and extended supervision.[4]

¶13 Robinson moved for postconviction relief alleging he received ineffective assistance of counsel on the basis of several identification evidence claims.[5] Robinson alleged that trial counsel should have objected that a ***Riverside*** violation had occurred and moved to suppress S.D.'s identification obtained as a result. *See **County of Riverside v. McLaughlin***, 500 U.S. 44, 56 (1991) (holding that a probable cause determination must be made within forty-eight hours of a warrantless arrest to be timely). In response to the State producing proof of the

---

[4] The Honorable Michelle A. Havas presided over Robinson's trial and sentencing. The Honorable Lindsey Grady presided over Robinson's postconviction motion. We refer to either of them as the circuit court.

[5] In addition to the identification evidence claims, which we discuss in detail below, Robinson argued trial counsel should have objected to the use of his prior convictions. Further, Robinson argued that the charge of robbery of a financial institution, WIS. STAT. § 943.87 (2017-18), was unconstitutional.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

timely probable cause determination in the CR-215 process, Robinson argued that trial counsel was ineffective for failing to suppress S.D.'s identification in the police lineup, which occurred without benefit of counsel after his right to counsel attached. After requesting additional briefing on when the right to counsel attaches, the circuit court denied Robinson's motion without a hearing. Robinson appealed. We certified to the Supreme Court of Wisconsin the question of when the Sixth Amendment right to counsel attaches in this scenario. Our supreme court granted certification, but after briefing and oral argument, vacated the certification and remanded the case to this court. We now reach the substance of Robinson's appeal.

## DISCUSSION

¶14 We address Robinson's arguments in three sections. First, we discuss the constitutional dimensions of Robinson's claim that his Sixth Amendment right to counsel attached during the probable cause determination and bail setting process. Second, we address Robinson's ineffective assistance of counsel claims: (1) that trial counsel should have moved to exclude the identification evidence—S.D.'s lineup identification—because it arose from a violation of his Sixth Amendment right to counsel; (2) counsel should have made the jury aware that two other witnesses failed to identify Robinson as the robber; (3) counsel failed to introduce evidence that at least two other men were identified as the robber; and (4) counsel should have presented the testimony of an

eyewitness identification expert. Finally, we address Robinson's claim that the State's evidence was insufficient to convict him.[6]

*I.    Attachment of the right to counsel after a warrantless arrest*

¶15    We begin with Robinson's claim that trial counsel was ineffective for failing to move to suppress S.D.'s identification based on a violation of his Sixth Amendment right to counsel. S.D.'s identification was made in a live lineup conducted by Milwaukee police after Robinson's warrantless arrest and a probable cause determination, but before counsel was appointed.

¶16    To understand Robinson's claim, we consider when the Sixth Amendment right to counsel attaches in the context of warrantless arrests. The Supreme Court held that the right to counsel guaranteed by the Sixth Amendment attaches "at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." ***Kirby v. Illinois***, 406 U.S. 682, 689 (1972) (plurality opinion). The right to counsel "attaches when the government has 'committed itself to prosecute'" and does not depend on "prosecutorial awareness." ***Rothgery v. Gillespie County***, 554 U.S. 191, 206-07 (2008) (citation omitted). An "accusation filed with a judicial officer is sufficiently formal, and the government's commitment to prosecute it sufficiently concrete, when the accusation prompts arraignment and restrictions on the accused's liberty to facilitate the prosecution[.]" ***Id.*** at 207. "Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the

---

[6] During briefing, Robinson withdrew his claim that robbery of a financial institution, WIS. STAT. § 943.87 (2017-18), was unconstitutional.

postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Id.* at 212 (citation and footnote omitted).

¶17    In *Rothgery*, the Supreme Court considered Texas's Article 15.17 hearing, which combined "the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Id.* at 195 (citation and footnote omitted).  "[T]he Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention[.]" *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975).  In *Riverside*, the Supreme Court determined that a probable cause determination made within forty-eight hours of a warrantless arrest is timely.  *Id.*, 500 U.S. at 56.

¶18    A Fourth Amendment probable cause determination can be made independently; "at the suspect's first appearance before a judicial officer"; or "incorporated into the procedure for setting bail or fixing other conditions of pretrial release." *Gerstein*, 420 U.S. at 123-24.  As the Supreme Court of Wisconsin explained when it adopted the forty-eight hour rule, the "probable cause determination can be made at a nonadversarial proceeding[;] the arrested person is not required to physically appear before the judge"; and it "can be made at the initial appearance or in combination with any other pre[]trial proceeding[.]" *State v. Koch*, 175 Wis. 2d 684, 698-99, 499 N.W.2d 152 (1993).  A probable cause determination by itself and on its own is "not a 'critical stage' in the prosecution that would require appointed counsel." *Gerstein*, 420 U.S. at 122 (citation omitted).

¶19    To comply with *Riverside*'s forty-eight hour rule, the Milwaukee County Circuit Court has a court commissioner or judge review a sworn affidavit

from law enforcement to determine if probable cause for the arrest exists and to set initial bail. This procedure is accomplished by an all-paper review and the completion of the CR-215 form, which identifies the source of the probable cause statement, the date and time of the warrantless arrest, the probable offense, the initial bail, and the date and time the form was completed by a judicial officer. The defendant does not appear in person and instead gets a copy of the determination after it is made. The CR-215 form itself lists as authority the Fourth Amendment and WIS. STAT. § 970.01, the statute governing the "Initial Appearance Before a Judge."

¶20 The State distinguishes the CR-215 process from the *Rothgery* rule based on the fact that the accused does not make a physical appearance before a judicial officer. We reject this argument. The right to counsel attaches during the "first formal proceeding against an accused[.]" *McNeil v. Wisconsin*, 501 U.S. 171, 180-81 (1991). The lack of an in-person court hearing does not negate that the CR-215 process was the first formal proceeding against Robinson in this case. An "accusation filed with a judicial officer is sufficiently formal, and the government's commitment to prosecute it sufficiently concrete, when the accusation prompts arraignment and restrictions on the accused's liberty to facilitate the prosecution[.]" *Rothgery*, 554 U.S. at 207. "By that point, it is too late to wonder whether he is 'accused' within the meaning of the Sixth Amendment, and it makes no practical sense to deny it." *Id.*

¶21 In *Rothgery*, the Fifth Circuit concluded that the adversarial process had not begun for Rothgery at the Article 15.17 hearing because his appearance was only before a magistrate and no prosecutors were aware or involved. *Id.* at 197. The Supreme Court disagreed, concluding that it was error to focus "not on the start of adversarial judicial proceedings, but on the activities and knowledge of

9

a particular state official who was presumably otherwise occupied." *Id.* at 198-99. We conclude that the State's focus on physical presence during the CR-215 process is similarly misguided.

¶22    "The initiation of judicial criminal proceedings is far from a mere formalism." *Kirby*, 406 U.S. at 689 (plurality opinion). When the defendant is "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law," the defendant faces "the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Id.* at 689-90 (citation omitted). The CR-215 process shifted Robinson from a person under investigation to the "accused" in the criminal justice system. Therefore, it is reasonable that the shift arising out of the CR-215 process attaches Sixth Amendment guarantees.

¶23    We conclude that Milwaukee County's CR-215 process signals a "commitment to prosecute" as much as the Texas procedure at issue in *Rothgery*. *Id.*, 554 U.S. at 206-07. The record reflects that a Milwaukee Police Department detective signed an affidavit on the CR-215 form averring to the probable cause to believe that Robinson committed the bank robbery. A Milwaukee County Circuit Court commissioner reviewed the affidavit and found probable cause for Robinson's continued detention, and then set bail at $35,000, which further restricted his liberty beyond his arrest and detention. The form also provides for distribution of this completed form to the "arrested person." Therefore, we conclude that the Sixth Amendment right to counsel attaches during the CR-215

process, thus necessitating a right to counsel for any later "critical stages" of prosecution.[7]

¶24 While the attachment of the right to counsel during the CR-215 process does not necessitate counsel during that process, it requires access to counsel for critical stages after that point. *See Gerstein*, 420 U.S. at 122. An identification lineup occurring after the probable cause determination and bail setting, such as the CR-215 process, is a critical stage of the prosecution. *United States v. Wade*, 388 U.S. 218, 237 (1967). "[A]s the accused's conviction may rest on a courtroom identification" that was "the fruit of a suspect pretrial identification which the accused is helpless to subject to effective scrutiny at trial, the accused is deprived of that right of cross-examination which is an essential safeguard to his right to confront the witnesses against him." *Id.* at 235. As our supreme court observed in assessing the importance of counsel in post-indictment identification lineups, "[i]t is [counsel's] presence, not [counsel's] participation, that is relied upon to prevent unfairness and lessen the hazards of eyewitness identification at the lineup itself." *Wright v. State*, 46 Wis. 2d 75, 84, 175 N.W.2d 646 (1970). Having clarified the attachment of the right to counsel during the CR-215 process, we now turn to the substance of Robinson's postconviction claims.

---

[7] There is no mandatory Wisconsin authority deciding the attachment of the right to counsel during the CR-215 process. This court addressed the CR-215 process specifically in an unpublished decision, where we concluded that the lack of physical presence during the CR-215 process distinguished it from the holdings in *Rothgery v. Gillespie County*, 554 U.S. 191 (2008). *State v. Garcia* (*Garcia I*), 2016AP1276-CR, unpublished slip op. (WI App Apr. 10, 2018). On review, the Supreme Court of Wisconsin split evenly and affirmed our decision in a per curiam order. A federal magistrate granted Garcia habeas relief after the per curiam order. *Garcia v. Foster*, No. 20-CV-336, 2021 WL 5206481 (E.D. Wis. Nov. 9, 2021). The State appealed this determination; however, the Seventh Circuit affirmed the magistrate judge. *Garcia v. Hepp* (*Garcia II*), 65 F.4th 945, 955 (7th Cir. 2023). As the federal decisions are similarly persuasive and not binding, we review this question of law independently.

## II.    Ineffective assistance of counsel claims

¶25    Robinson argues that trial counsel was ineffective on four bases: (1) the failure to move to suppress S.D.'s identification because it occurred without benefit of counsel after that right had attached in the CR-215 process; (2) the failure to introduce evidence that two other bank employees present during the robbery did not identify Robinson in the live identification lineup, (3) the failure to introduce evidence that two other men were named and investigated as potential robbers based on tips generated by the news report that also identified Robinson, and (4) the failure to present an eyewitness identification expert. We conclude that these claims are not entitled to a *Machner*[8] hearing.

¶26    Although our analysis considers important constitutional issues, our inquiry focuses on whether Robinson has alleged sufficient material facts to be entitled to postconviction relief on the basis of ineffective assistance of counsel. "A *Machner* hearing is required before a court may conclude a defendant received ineffective assistance." *State v. Sholar*, 2018 WI 53, ¶53, 381 Wis. 2d 560, 912 N.W.2d 89. Here, the circuit court denied Robinson's motion without a hearing. Therefore, our question is whether Robinson has made the necessary showings to advance his claim.

¶27    To assess whether postconviction relief is warranted, we independently review two questions of law: (1) whether a defendant's postconviction motion "on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief" and (2) "whether the record

---

[8] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

12

conclusively demonstrates that the defendant is not entitled to relief." *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. If the motion supports relief based on those two questions, then the defendant is entitled to a *Machner* hearing. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If not, "then either option—holding a hearing or not—is within the circuit court's discretion." *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.

¶28 Further, a postconviction motion must "allow the court to meaningfully assess a defendant's claim" through specific, material factual allegations. *Allen*, 274 Wis. 2d 568, ¶21. In other words, the defendant must allege "who, what, where, when, why, and how" within the four corners of the postconviction motion with material factual objectivity. *Id.*, ¶23.

¶29 To succeed on an ineffective assistance of counsel claim, Robinson's motion for postconviction relief must allege sufficient material facts to satisfy the familiar two-prong test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984): deficient performance and prejudice to the defense from that performance. To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court need not address both prongs "if the defendant makes an insufficient showing on one." *Id.* at 697.

A. *S.D.'s identification of Robinson as the robbery suspect in a lineup that occurred without benefit of counsel after that right had attached*

¶30 The State argues that Robinson's claim must fail because the procedural posture of the case shows that this issue was unsettled law at the time Robinson's case was tried. Wisconsin law provides that "ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." *State v. Maloney*, 2005 WI 74, ¶29, 281 Wis. 2d 595, 698 N.W.2d 583 (citation omitted). Robinson responds that trial counsel was deficient for failing to pursue a claim based on mandatory United States Supreme Court holdings in *Rothgery*.

¶31 The prejudice inquiry is simpler, and we address it first. S.D.'s identification of Robinson as the bank robber was the linchpin of the State's case. *See **Gilbert v. California***, 388 U.S. 263, 272 (1967) ("The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error."); *United States v. Wade*, 388 U.S. 218, 241 (1967). If trial counsel had moved to exclude S.D.'s identification on the basis of the constitutional violation, there is a reasonable probability of a different outcome at trial. Therefore, we consider Robinson to have made the required showing of prejudice.

¶32 However, Robinson has failed to allege sufficient material facts to make a showing of deficiency. Defense counsel must be well versed in criminal law and the failure to be informed of available defenses under the facts and circumstances of the case constitute deficient performance. *State v. Felton*, 110 Wis. 2d 485, 505, 329 N.W.2d 161 (1983). Nevertheless, an attorney is not deficient for failing to pursue an "unsettled proposition of law." *Maloney*, 281

14

Wis. 2d 595, ¶23 (citation omitted). While there have been federal cases that have concluded that Milwaukee County's CR-215 process triggered the attachment of the right to counsel as early as 2009, a year after **Rothgery**, the issue has been contested. *See **United States v. West***, No. 08-CR-157, 2009 WL 5217976, at *10 (E.D. Wis. Mar. 3, 2009).[9]

¶33 The United States District Court for the Eastern District of Wisconsin has analyzed the CR-215 process in the Sixth Amendment context on more occasions than the state court, which did not address the issue until April 2018. *See **State v. Garcia** (**Garcia I**)*, 2016AP1276-CR, unpublished slip op. (WI App Apr. 10, 2018). Our assessment of trial counsel's performance must avoid "the distorting effects of hindsight" and focus on the perspective at the time. ***Strickland***, 466 U.S. at 689. The federal cases are instructive to our analysis, because while it has consistently concluded that attachment of right to counsel was triggered, it did not necessarily consider this matter clearly established until recently.

¶34 In two cases, the district court concluded the police most likely had qualified immunity against the Sixth Amendment violation after the CR-215 process was completed because it was not "so obvious that a reasonable state actor

---

[9] The magistrate court addressed a similar fact scenario of an identification lineup that occurred without benefit of counsel after a CR-215 form had been completed. The court recommended that "in light of the government conducting a lineup in violation of West's Sixth Amendment right to counsel, suppression of all evidence obtained as a direct result of that lineup is appropriate." ***United States v. West***, No. 08-CR-157, 2009 WL 5217976, at *10 (E.D. Wis. Mar. 3, 2009). The district court adopted the magistrate court's recommendation and granted the motion to suppress evidence from the lineup. ***United States v. West***, No. 08-CR-157, 2009 WL 2605219, at *1 (E.D. Wis. Aug. 19, 2009). The Seventh Circuit did not disturb the district court's reasoning, but remanded on different grounds. ***United States v. West***, 628 F.3d 425, 430 (7th Cir. 2010).

would know that what they are doing violates the [c]onstitution." *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001). *Compare Jackson v. Devalkenaere*, No. 18-CV-446-JPS, 2019 WL 4415719, at \*3 (E.D. Wis. Sept. 16, 2019) (concluding that "as of May 2014, it was not clearly established that the right to counsel attaches after the commissioner's probable cause determination"); *Ross v. Jacks*, No. 19-CV-496-JPS, 2019 WL 4602946, at \*2-3 (E.D. Wis. Sept. 23, 2019) (concluding similarly in a 2015 case), *with Garcia v. Hepp* (*Garcia II*), 65 F.4th 945, 955 (7th Cir. 2023) (granting habeas relief, under 28 U.S.C. § 2254(5)(1), after concluding that *Garcia I* was an "unreasonable application" of clearly established law on the attachment of Sixth Amendment right to counsel).[10]

¶35 Thus, in 2017, when trial counsel was formulating trial strategy, we cannot conclude that the matter was so settled that counsel would be deficient for failing to pursue it. Before Robinson's trial in May 2018, this court concluded, in an unpublished, persuasive but non-binding case—*Garcia I*—that *Rothgery*'s holdings depended on the defendant's appearance in court. *Garcia I*, 2016AP1276-CR, ¶27.[11] While this decision reaches an opposite conclusion of *Garcia I*, when case law can be "reasonably analyzed in two different ways," then the law is not settled. *Maloney*, 281 Wis. 2d 595, ¶29. As the State

---

[10] The United States District Court for the Eastern District of Wisconsin also addressed this issue in 2015, and although it concluded the Sixth Amendment right to counsel attached during the CR-215 process, it was not asked to consider if the law was clearly established. *United States v. Mitchell*, No. 15-CR-47, 2015 WL 5513075, at \*4 (E.D. Wis. Sept. 17, 2015), *aff'd*, 657 F. App'x 605 (7th Cir. 2016).

[11] Pursuant to the Wisconsin rules of appellate procedure, although "[a]n unpublished opinion may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case," WIS. STAT. RULE 809.23(3)(a), "an unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge panel … may be cited for its persuasive value," RULE 809.23(3)(b). *Garcia I* was an authored opinion from a three-judge panel.

acknowledges, the federal decisions to grant habeas relief in this context will dictate police procedure in similar cases going forward, and we conclude the law is now settled. Therefore, we conclude that trial counsel was not deficient for failing to pursue suppression based on the violation of Robinson's constitutional right to counsel.

### B. Witnesses who did not identify Robinson as the robber

¶36 Second, Robinson asserts that trial counsel was ineffective for failing to introduce evidence that two other U.S. Bank employees present at the robbery did not identify Robinson. The first omitted witness was D.W., a security guard at the bank, who observed an individual enter the bank—she asked him to remove his hood because it was against bank policy and then she watched him pick up a wire transfer slip and get into the teller line. The second omitted witness was E.T., a personal banker, who observed an individual she did not recognize as a regular customer pick up a wire transfer slip and get into the teller line. Neither D.W. nor E.T. identified Robinson in the police identification lineup on December 22, 2017; in fact, neither witness identified any of the lineup subjects as the perpetrator.

¶37 Robinson argues that the failure to present these witnesses or their evidence was deficient performance because S.D. was presented as the key, credible witness to the robbery and the State's other evidence was used to corroborate or support her identification. Robinson also argues that because identity was the main disputed fact at issue, testimony that other bank employees could not or did not identify him would rebut the State's identification evidence and would have an impact on the jury's assessment. He argues that the failure to present this evidence prejudiced his defense.

¶38 The State argues that the testimony of these two other bank employees was of limited value because neither were as close to the robber as S.D. The failure to present evidence of "limited value" does not prejudice the defendant's case. *See **State v. Lindell***, 2001 WI 108, ¶130, 245 Wis. 2d 689, 629 N.W.2d 223. Therefore, the State contends there was no prejudice in failing to present these witnesses.

¶39 We conclude that Robinson has not alleged sufficient, non-conclusory, material facts to make a showing of both the deficiency and prejudice prongs of this ineffectiveness claim. *See **Allen***, 274 Wis. 2d 568, ¶9. Robinson does not allege that either D.W. or E.T. were confident that they had seen the robber well enough to identify him, such that their failures to identify a suspect in the live lineup would infer that the robber was not present. In light of S.D.'s strong confidence in her identification of the robber during her testimony, it is unlikely that the jury's verdict would be different upon hearing that these other witnesses did not identify Robinson.

### C. Evidence of conflicting identification

¶40 Third, Robinson contends that counsel should have introduced evidence that there were conflicting identifications, with two other men, L.B. and T.N., having been identified as the robber in calls to police in response to news reports showing surveillance footage of the robbery. Robinson was identified as a suspect by an anonymous caller in response to the news release of the surveillance footage. However, two other suspects were reported. First, an anonymous caller reported that she identified L.B. from the video footage. The record reflects that the police investigation led to a comparison of L.B.'s 2007 booking photograph and S.D.'s description of the robber—both were listed as about 5'9" tall, with a

dark complexion and a mustache, although L.B. was listed as also having a goatee beard. Second, T.N.'s mother contacted police to report that she believed her son, T.N., was the robber, after viewing the surveillance footage. An officer interviewed the mother, as well as T.N.'s girlfriend's stepfather, who also thought that T.N. looked like the man in the news release.

¶41 Robinson argues that with identification as the key issue, having three sets of people identify three different suspects when only one person robbed the bank means that not all of the identifications can be correct. He argues that with evidence of other suspects, the jury would not just be comparing Robinson to the surveillance video, but could compare the footage to different suspects when deciding which identification to credit.

¶42 The circuit court concluded that Robinson failed to show deficient performance because he was essentially raising a third-party perpetrator defense, which would have been barred by *State v. Denny*, 120 Wis. 2d 614, 624, 357 N.W.2d 12 (Ct. App. 1984) (concluding that admitting evidence of a third party perpetrator requires a showing of motive, opportunity, and direct connection "which is not remote in time, place or circumstances"). Robinson argues that the evidence of two alternative suspects could be admissible under *Denny* because the potential monetary gain from the bank robbery provides motive and being identified in the surveillance video footage as the robber shows that each had an opportunity to commit and a direct connection to the robbery. We conclude that Robinson's allegations in support of the two other possible suspects being introduced as *Denny* evidence are conclusory and speculative. *See Allen*, 274 Wis. 2d 568, ¶9. Under this theory, his claim fails because as the State argues,

Robinson has not shown the required motive, opportunity, and direct connection to the robbery.[12]

¶43 Further, Robinson argues that evidence of the other suspects would be admissible relevant evidence under WIS. STAT. § 904.01 offered to prove the unreliability of the identification evidence at trial. He asserts that the community members who responded to the news reports were confident in their identifications, including a mother confident enough in her identification to report her own son as the robber to police. Robinson contends that if evidence of other identifications and the circumstances of those identifications were admitted, it would show the inherently faulty nature of eyewitness testimony and would call into question S.D.'s identification of Robinson.

¶44 We conclude that Robinson's allegations are insufficient to make a showing of prejudice. *See Allen*, 274 Wis. 2d 568, ¶9. Even considering this evidence in light of Robinson's final ineffectiveness claim that counsel should have presented an eyewitness identification expert, Robinson has not made a showing of prejudice. Robinson argues that all three of the callers who identified someone as the robber based on the news report could not be correct. However, it would be a reasonable inference that one of the callers was correct—i.e., the caller who identified Robinson independently. Combined with S.D.'s strong confidence

---

[12] Additionally, Robinson argued that *Denny* is unconstitutional because it precludes a defendant from presenting a complete defense, citing the Sixth and Fourteenth Amendments to the United States Constitution, article I, section 7 of the Wisconsin Constitution, and *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973). Robinson presented this argument to the circuit court and this court, thus preserving the issue for appeal to the Supreme Court of Wisconsin. We decline to address this argument but note its preservation. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (holding that only the Supreme Court of Wisconsin "has the power to overrule, modify or withdraw language from a published opinion of the court of appeals").

in her identification of Robinson as the robber, it is unlikely that the jury's verdict would be different if the other two identifications had been presented.

### D. Expert on eyewitness identification testimony

¶45    Fourth, Robinson argues that trial counsel should have presented an eyewitness identification expert to aid the jury. Robinson argues that although trial counsel argued that eyewitness identification evidence was questionable, his arguments inherently were not evidence. Robinson contends that there was no strategic reason for trial counsel to not present an expert, especially with counsel's apparent knowledge of the weaknesses of eyewitness identification.

¶46    The State argues that there is no authority under Wisconsin law that holds that trial counsel is deficient for failing to present an expert to discuss the limitations of eyewitness identification testimony. The State relies upon a decision upholding a circuit court's exercise of discretion to deny an eyewitness identification expert because the "the limitations of eyewitness identification" were known by the court, which was the trier of fact in that matter. *State v. Shomberg*, 2006 WI 9, ¶17, 288 Wis. 2d 1, 709 N.W.2d 370. Although the *Shomberg* court observed that it was likely that a later court would allow such an expert to testify, Robinson's allegations are insufficient to establish "who, what, where, when, why, and how" an expert would have affected the outcome of trial or how counsel was deficient for failing to procure one. *See Allen*, 274 Wis. 2d 568, ¶23.

¶47    Ultimately, we conclude that Robinson's ineffectiveness claims were not entitled to a *Machner* hearing. Accordingly, "the circuit court did not erroneously exercise its discretion in denying his motion without a hearing." *Allen*, 274 Wis. 2d 568, ¶34.

### III. Sufficiency of the evidence

¶48    Robinson's final claim is that there was insufficient evidence presented for the jury to find one of the elements of the charged offense, specifically, that the entity robbed, U.S. Bank, was a financial institution.

¶49    "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law," which we review independently.  *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.  When reviewing the sufficiency of the evidence, this court "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."  *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  If more than one reasonable inference can be drawn from the evidence, we must adopt the inference that supports the verdict.  *See id.* at 506-07.  We "will uphold the conviction if there is any reasonable hypothesis that supports it."  *Smith*, 342 Wis. 2d 710, ¶24.

¶50    Robinson was charged and convicted of one count of WIS. STAT. § 943.87 (2017-18), robbery of a financial institution, which provides "[w]hoever by use of force or threat to use imminent force takes from an individual or in the presence of an individual money or property that is owned by or under the custody or control of a financial institution is guilty of Class C felony."  The jury was instructed that to convict, it had to be satisfied beyond a reasonable doubt that the State proved the following four elements:  (1) "U.S. Bank is a financial institution.  'Financial institution' means a bank, a savings bank, a savings and loan association, a trust company, a credit union, a mortgage banker, or a mortgage

broker"; (2) "the money or property was owned by or under the custody and control of U.S. Bank"; (3) "the defendant took and carried away the money or property from an individual or the presence of an individual"; and (4) "the defendant acted forcibly."

¶51    Robinson argues that the State failed to prove beyond a reasonable doubt that U.S. Bank was a financial institution.  "The burden of proof is upon the [S]tate to prove every essential element of the crime charged beyond reasonable doubt."  *Bautista v. State*, 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971).  In this subchapter, the definition of a financial institution included "a bank" as defined in WIS. STAT. § 214.01(1)(c), which stated a "bank" is "a commercial bank chartered by the U.S. comptroller of the currency or organized under ch. 221."  Robinson argues that there was no testimony about U.S. Bank's organization or charter status.

¶52    The State argues that there was sufficient circumstantial evidence that U.S. Bank was a financial institution.  In a similar challenge to a robbery of a financial institution charge, this court concluded that direct evidence of the bank's charter was not required, and "circumstantial evidence was sufficient to support the jury's verdict."  *State v. Eady*, 2016 WI App 12, ¶1, 366 Wis. 2d 711, 875 N.W.2d 139.  In *Eady*, the circumstantial evidence included testimony "regarding the day-to-day operation of the bank, the U.S. Bank deposit slip found in the clothing discarded near the bank, and the numerous signs indicating that the bank was a 'U.S. Bank' insured by the FDIC."  *Id.*, ¶12.

¶53    Similarly, here, S.D. testified she was an international banker and that U.S. Bank was a financial institution.  S.D. described the operations of the bank:  the movement of customers to teller stations and the place in the bank

where customers could get withdrawal, deposit, and wire transfer slips. Furthermore, the record reflects that the still images from the bank's surveillance video footage of the robbery show an FDIC sign prominently on the teller's window in the lower left.

¶54    We agree with the State that there is sufficient circumstantial evidence that the U.S. Bank robbed on December 18, 2017, was a financial institution.  "It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial[.]"  **Poellinger**, 153 Wis. 2d at 501.  As a reviewing court, we "must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law."  **Id.** at 507.  The jury's finding of the first element is not incredible as a matter of law.[13]  We conclude that Robinson's challenge to the sufficiency of the evidence to support his conviction fails.

## CONCLUSION

¶55    For the reasons stated above, we conclude that Robinson's ineffectiveness claims failed due to insufficient pleading and the circuit court acted within its direction when it denied those claims without a **Machner** hearing. Further, we conclude that there was sufficient evidence to support Robinson's conviction and this sufficiency challenge fails.

---

[13]  Additionally, the State argues that to the extent Robinson's claim rests on a challenge to the jury instructions, he forfeited this claim by failing to object at the jury instructions conference.  WIS. STAT. § 805.13(3); **State v. Trammell**, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564 ("[T]he court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review.").  We review the merits of Robinson's challenge to the sufficiency of the evidence and do not interpret it as a challenge to the jury instructions.

¶56 However, despite the failure of Robinson's related ineffectiveness claim, we conclude that the CR-215 process, which consists of an all-paper review during which a judicial officer determines probable cause and sets bail after a warrantless arrest, initiates adversarial judicial criminal proceedings and the commitment to prosecute such that the Sixth Amendment right to counsel attaches, thus requiring a right to counsel at critical stages after that point. We hold that this process must be accorded proper consideration wherever the CR-215 process is employed in Wisconsin.

*By the Court.*—Judgment and order affirmed.

Recommended for publication in the official reports.